**REGIONAL PROPERTIES, INC., Regional Properties of New Mexico, Inc., Kingsley Creek Inc., Jerry D. Shipley and Paul E. Thomes, Plaintiffs-Appellees,**

v.

**FINANCIAL & REAL ESTATE CONSULTING CO. and David Goldner, Defendants-Appellants.**

No. 83–1668.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1985.

---

John Alan Goren, Dallas, Tex., for defendants-appellants.

George W. Bramblett, Jr., Nina Cortell and Jay F. Whittle, Jr., Dallas, Tex., for plaintiffs-appellees.

Before CHARLES CLARK, Chief Judge, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This is an action for rescission of a contract by two real estate developers and their affiliated corporations against a securities broker who agreed to structure and market limited partnership interests. The developers' action for rescission is based on their discovery that the broker had never registered as a broker/dealer with the SEC and had thus violated the Securities Exchange Act by selling the partnership interests.

This court held on a prior appeal that the developers were entitled to bring their ac-

tion and had established a *prima facie* case for relief under the contract-voiding provision of the Securities Exchange Act. 678 F.2d 552 (1982). We also held that the district court erred in failing to rule upon the broker's asserted defenses, and we remanded for consideration of those defenses. On remand, the district court held that the broker's asserted defenses did not bar rescission of the contract between the developers and the broker. The court also denied a motion by the broker to admit newly discovered evidence. We affirm, although on grounds differing somewhat from those relied upon by the district court.

## I. FACTS

Plaintiffs Paul E. Thomes and Jerry D. Shipley are real estate entrepreneurs who planned to acquire, develop, and operate certain residential and commercial projects. Thomes and Shipley formed Regional Properties Inc., Regional Properties of New Mexico, Inc., and Kingsley Creek, Inc. to act as general partner for four Texas limited partnerships (collectively referred to as "Regional"). They created three residential property limited partnerships, Kingsley Creek, Thousand Pines, and Brooklake, and one shopping mall limited partnership, Montgomery Mall.

In October 1971, David Goldner and his sister created a New York partnership, Financial & Real Estate Consulting Company ("Financial"). Shipley and Thomes were introduced to Goldner through an intermediary in early 1974. At that time, Goldner represented to Thomes and Shipley that he had had considerable experience in real estate transactions and that he had a number of client investors who were interested in tax shelter investments. Goldner, in fact, had very little real estate experience.[1] He had never done securities work or practiced securities law in either state or federal courts. Goldner did not tell Thomes and Shipley at the time of their contract negotiations that he was not registered under federal securities law as a broker/dealer or that he had been disbarred in New York.[2] On April 4, 1974, Thomes, Shipley and Regional, Inc., and Financial, represented by Goldner, signed an agreement relating to the Kingsley Creek Limited Partnership.

Through Financial, Goldner agreed to structure, package and sell limited partnership interests in the Kingsley Creek Limited Partnership. Goldner advertised and tried to sell the limited partnership interests, but with little success. He actually sold very few of the interests, and eventually engaged the assistance of a registered broker/dealer, Holt & Hartman, to sell them. With the assistance of Holt & Hartman, all the Kingsley interests were eventually sold at terms that turned out to be highly unfavorable to Regional.[3]

---

**1.** From 1968 to 1969, Goldner worked as a real estate director for a fast food company reviewing sites for the company's operations and investment. During the latter part of 1969, he was a consultant for a restaurant chain evaluating prospective real estate sites for two months. In 1971, Goldner worked for five months as an investment consultant for a company involved in structuring and packaging FHA housing projects, but at no time was involved with the sale of interests. In October 1971, Goldner formed Financial, and from 1972 until 1974, when he became involved in the Regional project, Goldner structured and sold partnership interests for four apartment complexes. None of these transactions were registered under any federal or state securities law.

**2.** Goldner was disbarred in 1961 and never sought readmission to the New York bar.

**3.** On each partnership Regional was to receive a guaranteed sum, and any amount above that would go to Financial. In addition, Financial received a certain percentage of the cash flow that the general partners were entitled to receive. From the sale of the Kingsley partnership interests, Financial under the terms of the agreement was entitled to a $315,000 fee out of the $735,000 proceeds from the sale. By the time of trial, Financial had received from Regional $120,000 of its fee in relation to the Kingsley Creek project and the balance was placed in escrow pursuant to the agreement. *See* our prior decision *Regional Properties Inc. v. Financial Real Estate Consulting, Co.,* 678 F.2d 552 (5th Cir.1982), for a full recitation of the facts relating to the terms of the agreement.

To handle the legal documentation associated with the Kingsley project, Financial recommended to Regional that it engage Loren Weinstein, a New York attorney. Weinstein was retained by Regional for the purpose of preparing partnership documents for the Kingsley Creek transaction. Weinstein's legal fees for service associated with Regional's interests were paid by Regional. In August 1974, approximately three months before the closing of the Kingsley Creek interests and before the signing of the Thousand Pines and Brooklake agreements, Weinstein learned that neither Goldner nor Financial were registered as a broker/dealer with the SEC. On August 16, 1974, Weinstein sent a letter to Goldner advising him of his obligation to either register as a broker/dealer or fall within the "issuer" exemption [4] if he planned to sell limited partnership interests in the Kingsley Creek project. Weinstein testified at trial that he had "no idea" upon discovering Financial's unregistered status that Goldner had already made efforts to sell the interests. Weinstein testified that he had been satisfied that Financial's unregistered status was not in violation of Federal securities law because he believed that all selling of

the interests was being done by Holt & Hartman.

Thomes, Shipley, and their affiliated corporations brought this action against Goldner and Financial to rescind their agreements with Financial pursuant to § 29(b) of the Securities Exchange Act of 1934,[5] on grounds that Financial was not registered as a broker/dealer with the SEC as required by § 15(a)(1) of the Act.[6] Regional alleged that its agreements with Financial were void under the contract-voiding provision of § 29(b) and sought to recover sums already paid to Financial, less expenses incurred, and to obtain access to funds Financial had placed in escrow.

The district court found that Financial was a "broker" within the meaning of the Act and was therefore required to register under the Act, that Regional had standing to invoke § 29(b) remedies, and that Regional was entitled to rescind its contracts with Financial. On appeal, this Court held that Regional had a private cause of action under § 29(b) and that plaintiffs had established a *prima facie* case for relief. We also held that defendants should have been allowed to assert their defenses to rescission, and remanded for findings of fact and a ruling upon Financial's asserted defenses to Regional's § 29(b) claims.

4. There is no clear statutory exemption for "issuers" of securities from the broker registration requirement. Rather, an exemption for issuers arises by implication from the definition of "broker". Section 3(a)(4) of the Act provides: "the term 'broker' means any person engaged in the business of effecting transactions in securities for the account of others." An issuer that effects the distribution of its own securities is not engaging in transactions for the account of others but is instead selling securities for its own account. Thus an issuer is not subject to the Act's broker registration requirements.

5. Section 29(b) provides, in pertinent part:
Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provi-

sion, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation....
15 U.S.C. § 78cc(b) (1981).

6. Section 15(a)(1) of the Act provides, in pertinent part:
It shall be unlawful for any broker or dealer ... (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security ... unless such broker or dealer is registered in accordance with subsection (b) of this section.
15 U.S.C. § 78o (a)(1) (1981).

*Financial's Equitable Defenses.*[7]

On remand, the district court made the following findings: (1) that Weinstein was Regional's attorney and agent; (2) that Weinstein's knowledge of Financial's unregistered status could be imputed to Regional and (3) that the knowledge of Financial's status was insufficient to trigger an equitable defense to Regional's § 29(b) claim. With regard to this last finding, the court reasoned that even if Regional was on notice of Financial's unregistered status, knowledge of that fact did not put Regional on notice that Financial was in violation of the Act. Knowing that Financial was in violation of the Act by virtue of its unregistered status was a conclusion of law, and the district court held that conclusions of law were not imputable.

■ Although the district court, it appears, correctly concluded that Financial could not successfully assert any equitable defenses, we need not review these conclusions because we do not reach them. Pursuant to our prior decision, we do consider Financial's equitable defenses. But part of the controlling law concerning equitable defenses is that one who claims such defenses must come into court with clean hands. Financial asserts those defenses with hands which are sullied by its own conduct.

■ Section 29(b) of the Securities Exchange Act permits a party to a contract to seek its rescission if performance of the contract "involves the violation of or the continuance of any relationship or practice in violation of," any provision of the Securities Exchange Act of 1934. 15 U.S.C. § 78cc(b). Under the Act, brokers and dealers of securities are required to register with the Securities Exchange Commis-

sion. 15 U.S.C. § 78*o* (a)(1). Financial had not registered with the SEC when it undertook to sell securities for Regional in the form of limited partnerships. Under § 29(b), Regional was therefore entitled to rescind its agreement with Financial by virtue of Financial's failure to register in violation of the Act. In this appeal, Financial does not dispute Regional's right to rescission of the contract except for the assertion of equitable defenses which it contends bar Regional from rescission.

■ Under Texas law,[8] the right to rescind a contract may be lost by failure to assert the right or by conduct indicating an affirmation or ratification of the contract after a party has knowledge of facts which constitute grounds for rescission. We briefly note, for example, that under Texas law the equitable doctrines of laches, estoppel, and waiver are all grounded in the principle that a party with full knowledge of facts which entitle him to rescind a contract will be barred from asserting his right where he fails to act promptly upon this right to the detriment of another. Under the doctrine of laches, prejudice may result from a party's unreasonable delay in enforcing rights of which he has or should have had knowledge. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex.1964); *Culver v. Pickens*, 142 Tex. 87, 176 S.W.2d 167, 170; *Stergios v. Forrest Place Home Owner's Association*, 651 S.W.2d 396, 401 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). Similarly, a party may be estopped from asserting a right where, with actual or constructive knowledge of facts affecting his rights, the party leads another by his words or conduct to believe that he will acquiesce in the other's conduct. *Champlin Oil & Refining Co. v. Chastain*, 403

---

**7.** On remand, Financial also asserted election of remedies as a defense to Regional's § 29(b) claim. This defense was based on pleadings that Regional filed in a state court action brought by a broker/dealer who sued Regional for commissions earned in connection with the Kingsley Creek project. The district court ruled against Financial on this defense, which ruling Financial does not challenge in this appeal.

**8.** On previous appeal, this court held that Financial could assert any equitable defenses avail-

able to it under state law in response to Regional's 29(b) claim. The Court held that in view of the parties' agreement that state law would be applied to any equitable defenses, it would remand the case for application of Texas law. The Court noted that if federal common law were applicable, federal courts would look to state law for guidance. *Regional Properties v. Financial and Real Estate Consulting Co.,* 678 F.2d 552, 563 n. 19 (5th Cir.1982).

S.W.2d 376, 385 (Tex.1965). Finally, a waiver of rights may result where a party demonstrates intentional relinquishment of rights of which the party has full knowledge. *See Cattle Feeders, Inc. v. Jordan,* 549 S.W.2d 29, 33 (Tex.Civ.App.—Corpus Christi 1977, no writ).

These defenses cannot be successfully asserted, however, if the defendant comes to court with unclean hands. The Texas law on the doctrine of unclean hands is well developed. An equitable defense cannot be used to reward inequities nor to defeat justice. *Westworth Village v. Mitchell,* 414 S.W.2d 59, 60 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.). Under the doctrine of unclean hands, he who commits inequity is not entitled to equitable relief. *Harris v. Sentry Title Co.,* 715 F.2d 941, 950 n. 6 (5th Cir.1983); *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 410 (1960); *Cross v. Chem-Air South, Inc.,* 648 S.W.2d 754, 756 (Tex.App.—San Antonio 1983) (quoting *Howard v. Richeson,* 13 Tex. 553 (1855)); *Grohn v. Marquardt,* 657 S.W.2d 851, 855 (Tex.App.—Beaumont 1983 writ ref. n.r.e.).

In *Riley v. Davidson,* 196 S.W.2d 557 (Tex.Civ.App.—Galveston 1946, writ ref. n.r.e.), a party seeking equitable relief in the form of an injunction was denied such relief under the unclean hands doctrine because his own conduct was in violation of certain safety and pollution laws. Despite an ordinance which prohibited individuals from providing drinking water without a license to do so, the plaintiff in *Riley* laid pipes to supply drinking water and sought to enjoin the defendant over whose property the pipes were laid from cutting the pipes and, hence, the water supply. The Court held that even though the plaintiff may have been ignorant of the law, he did not have clean hands for purposes of requesting equitable relief because of his illegal act. *Id.* at 559.

■ We do not intimate, as did the court in *Riley,* that a violation of law might result in a *per se* finding of unclean hands. *Riley* was a case dealing with injunctive relief and different policy considerations were at issue because of the public interests of health and safety that were involved. But unlike the plaintiff in *Riley,* Financial was not ignorant of the fact that its conduct was in violation of the law. Financial knew of its duty to register with the SEC in order to sell limited partnership interests, but chose instead to conceal this fact and misrepresent itself as one authorized to handle securities offerings. These facts establish that under Texas law Financial came to court with unclean hands. Financial intentionally violated the law and misrepresented its qualifications. Texas courts would not permit it to then go on and successfully assert equitable defenses.[9]

The proof is clear that the relationship between Regional and Financial arose out of Financial's misrepresentation to Regional that Financial was experienced in the structuring of limited partnerships. Thomes and Shipley believed throughout the negotiations that they were dealing with a financial consultant with expertise in federal and state securities law and in the tax and legal consequences of structuring limited partnerships as tax shelter investments. By Financial's own stipulation, Goldner had very little experience in real estate ventures, and at no time revealed to Regional or Weinstein that Goldner was disbarred in New York. Such misrepresentation of material facts upon which Regional based its decision to engage Financial and enter into a contract with them clearly demonstrates that Financial had unclean hands. Further, Financial undertook actively to sell the limited partnership in violation of law. Financial thus is not entitled to the protection of the equitable defenses it seeks to assert.

*Motion for Newly Discovered Evidence.*

■ Upon remand, Financial also moved to admit newly discovered documentary · evidence pursuant to Fed.R.Civ.P.

---

9. Although we have determined that Texas law applies to the controversy before us, *see supra* n. 8, we also note that in *Kuehnert v. Texstar Corporation,* 412 F.2d 700, 704 (5th Cir.1969), this Court held that the unclean hands doctrine was applicable under certain circumstances in the context of federal securities law to issues controlled by federal law.

60(b). Financial sought to admit a document which it referred to as the "Carlsburg contract," a purported agreement for the sale of the Brooklake project between Regional and a third party that was allegedly executed but never consummated. Financial argued that the contract would support its position that Financial's own agreement with Regional was not patently unfair to Regional.

On May 20, 1983, appellants filed a motion to admit the Carlsburg contract as newly found evidence along with a motion for new trial. Rule 60(b) of the Federal Rules of Civil Procedure allows for the admission of "... newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." The rule further provides that such motion shall be made "not more than one year after the judgment, order, or proceeding was entered or taken." The dispute here is whether for purposes of Rule 60(b) the date of reference for determining the timeliness of the motion is June 23, 1980, when the original judgment was entered by the district court, or August 17, 1983, the date of the remand order. The appellant's motion is only time-barred if the original judgment is the proper point of reference.

Financial argues that the date of the remand order is the proper point of reference for determining the timeliness of its motion because the original judgment had been vacated. Financial's position, however, is not an accurate representation of the disposition of this action. On appeal, this Court affirmed the relief granted Regional in the district court's order of June 23, 1980, conditioned upon a finding on remand that Financial's equitable defenses did not bar Regional's § 29(b) claim. On remand, the district court held that Financial's defenses were not successfully asserted, and the original judgment as to the award of damages remained intact.

Thus, the remand was on the narrow issue of whether Financial could successfully assert any equitable defenses to Re-

gional's § 29(b) claim, and if necessary, to rule upon Regional's breach of fiduciary duty claim. The district court ruled on Financial's equitable defenses, but did not reach the fiduciary duty claim.[10] The Carlsburg contract which Financial seeks to admit as newly discovered evidence in no way relates to the defenses asserted by Financial to Regional's § 29(b) claim. Rather, the contract involved the question of the fairness of the agreement between Regional and Financial, which was not at issue on the remand. Allowing a court to entertain a motion for the admission of newly discovered evidence on remand when that evidence in no way relates to the issues to be considered would contravene the principles underlying the final judgment rule. *See* 7 J. Moore, *Moore's Federal Practice* ¶ 60.28[2] n. 20 (Matthew Bender, 1983). The date of the original judgment is the proper date of reference for consideration of appellants 60(b) motion, and we thus find that the district court properly dismissed appellant's motion as untimely.

AFFIRMED.

---

**10.** Because we hold that Regional's § 29(b) claim is not barred by Financial's asserted de-fenses, we need not address Regional's breach of fiduciary duty claim.