Ilya BOGUSLAVSKY, Plaintiff–
Appellant,

v.

Martin H. KAPLAN and Gusrae, Kaplan
& Bruno, Defendants–Appellees,

Paul T. Russo, Defendant.

Docket No. 97–9422.

United States Court of Appeals,
Second Circuit.

Submitted Aug. 11, 1998.

Decided Oct. 9, 1998.

Ilya Boguslavsky, pro se, Short Hills, NJ.

Mark J. Astarita, New York, NY (Gusrae, Kaplan & Bruno), for Defendants–Appellees.

Before: CALABRESI, CABRANES, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge:

Plaintiff-appellant Ilya Boguslavsky appeals from a judgment of the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge* ), dismissing his complaint based on the doctrine of collateral estoppel. Judge Stein found that Boguslavsky was precluded from bringing his *pro se* securities action in the District Court because he had already litigated a claim for securities fraud before an arbitration panel of the National Association of Securities Dealers. As a result, the District Court granted summary judgment to defendants Martin H. Kaplan, Paul T. Russo, and the law firm of Gusrae, Kaplan & Bruno, and dismissed Boguslavsky's complaint in its entirety. We conclude, however, that Boguslavsky's District Court action asserted certain claims that had not been presented in the prior arbitration and, therefore, the doctrine of collateral estoppel did not bar Boguslavsky's suit in its entirety. Thus, while we affirm the District Court's order granting summary judgment to the defendants as to the claim presented in the NASD arbitration, we vacate that part of the District Court's order dismissing Boguslavsky's action *in toto* and remand the case for further proceedings.

## BACKGROUND

Following an October 20, 1994, telephone conversation with Boguslavsky, Dmitry Aranovich ("Aranovich"), an account representative at South Richmond Securities, Inc. ("SRSI"), on October 21, opened an account at SRSI in the names of Boguslavsky and his wife, Irina. Over the next two months, Aranovich prompted Boguslavsky to make a series of purchases in three securities—CPI Aerostructures, Inc. ("CPIA"), Telmed, Inc. ("TEMD"), and Diplomat Corporation warrants ("DIPLW")—which, according to Boguslavsky, SRSI sold from its own inventory and for which SRSI served as a market maker. In addition, SRSI underwrote the TEMD and DIPLW securities purchased for Boguslavsky's account. Boguslavsky alleges that SRSI did not inform him of either its market making or underwriting role with respect to these securities at the time of his purchases. Boguslavsky learned that SRSI

was a market maker in CPIA and TEMD from the transaction confirmations that he received following his purchases of these two securities. The confirmations, however, did not reflect SRSI's market making status in DIPLW, and Boguslavsky only discovered this fact during a conversation with Aranovich on January 12, 1995—several weeks after the DIPLW transaction had been completed and after SRSI had ceased operations.

On December 20, 1994, Martin H. Kaplan ("Kaplan"), a member of Gusrae, Kaplan & Bruno ("GK & B") and the Voting Trustee for all outstanding shares of SRSI, completed a sale of all SRSI assets to another broker-dealer, Rickel & Associates ("Rickel"). Boguslavsky claims that in anticipation of its cessation of business, SRSI attempted to convince unsuspecting account holders to purchase securities from its inventory without disclosing its market making and underwriting activities for those securities. Boguslavsky also maintains that SRSI, through Kaplan, transferred his account to Rickel without notifying him, and that GK & B now possesses the proceeds from the sale of SRSI's assets as well as the money fraudulently procured from him.

As a result, Boguslavsky filed a complaint with the New York State Attorney General's Office. The Attorney General's Office contacted Paul T. Russo ("Russo"), former Executive Vice President of SRSI, and instructed him to respond directly to Boguslavsky concerning his complaint. On October 19, 1995, when Russo failed to respond, Boguslavsky filed an arbitration action with the NASD (the "NASD proceeding") against: Rickel; Aranovich; Andreas Zigouras ("Zigouras"), supervising sales manager and an executive officer at SRSI; Joseph Fedorko ("Fedorko"), an account supervisor at SRSI; John Kawas ("Kawas"), an individual whom Boguslavsky claimed was SRSI's Director of Compliance; and GK & B. Boguslavsky subsequently dismissed Kawas from the NASD proceeding, and GK & B refused to submit to the NASD panel's jurisdiction, so it was not a party to the arbitration.

In the NASD proceeding, Boguslavsky alleged that the respondents violated Rules 10b–5 and 10b–10, 17 C.F.R. §§ 240.10b–5, 240.10b–10 (1998), promulgated under the Securities Exchange Act of 1934 (the "1934 Act"), by failing to disclose SRSI's roles as market maker and underwriter for DIPLW securities. Boguslavsky sought $13,023.75 in compensatory damages, the amount he claimed he deposited in his SRSI account between October 21 and December 29, 1994, and an additional $13,023.75 in punitive damages.

In October of 1996, during the pendency of the arbitration, Boguslavsky also filed this *pro se* action in the Southern District of New York (the "District Court action"). In his Amended Complaint, he alleged that the defendants violated Rules 10b–5 and 10b–10 based on the failure of SRSI's employees, whom the defendants controlled, to disclose the company's market making and underwriting roles with respect to its sale of DIPLW securities to him. Boguslavsky sought compensatory damages of $13,072.75 and punitive damages of $1,300,000. He also alleged that his transaction with SRSI was "unlawful and void" under § 29 of the 1934 Act, 15 U.S.C. § 78cc (1994).

■ On February 19, 1997, the NASD arbitrators rendered a decision "[a]fter considering the pleadings, the testimony and the evidence presented at the hearing." The three-member panel determined that Boguslavsky was entitled to recover a total of $3,128.76, with $2,190.13 due from Aranovich, $625.75 from Fedorko, and $312.88 from Zigouras. The panel, however, dismissed all claims against Rickel. In addition, by a two-to-one vote, the arbitrators held that Boguslavsky was not entitled to punitive damages from the respondents, although the dissenting member of the panel would have awarded Boguslavsky $10,000. The panel did not explain its decision,[1] although the award is reported in *Boguslavsky v. Rickel & Assocs.,*

---

1. The absence of any explanation for the NASD panel's decision does not affect the validity of the arbitration proceeding. It is well-established that arbitrators generally need not explain their decisions. *See Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 204 (2d Cir.1998); *Koch Oil, S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985).

*Inc., et al.,* 1997 WL 288397 (N.A.S.D.1997) (Getzler, Maden, and Kaplan, Arbs.).

Following the issuance of the NASD panel's decision, defendants Kaplan and GK & B moved for summary judgment in the District Court action pursuant to Rule 56 of the Federal Rules of Civil Procedure. They argued that Boguslavsky's suit was based solely on acts committed by SRSI's employees, and that, because the issues of primary liability and damages with respect to these acts had already been decided in the NASD arbitration, any further litigation of these issues was barred by collateral estoppel. Moreover, they contended that Kaplan was not a "controlling person" within the meaning of § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a) (1994), and therefore, he could not be held secondarily liable for the $3,128.63 that Boguslavsky was awarded in the NASD proceeding. In response, Boguslavsky opposed the defendants' motion and moved for summary judgment with respect to Kaplan's liability.

In an Opinion and Order, the District Court held that Boguslavsky's suit was precluded in its entirety by the doctrine of collateral estoppel, concluding that it raised but one issue—"whether securities fraud was committed by South Richmond or its employees in connection with its sale of DIPLW securities to plaintiff in December of 1994." *Boguslavsky v. Kaplan,* No. 96–7826, 1997 WL 672007, at *3 (S.D.N.Y. Oct. 29, 1997). It therefore denied Boguslavsky's motion for partial summary judgment, granted the defendants' motion for summary judgment, and dismissed Boguslavsky's complaint.[2] *Id.* at *4.

## DISCUSSION

■■■ On appeal, Boguslavsky argues that the District Court erred in applying collateral estoppel to his action because, *inter alia,*

his claims were not limited to the precluded issue and he did not have a full and fair opportunity to litigate the issues during the arbitration.[3] We review *de novo* a district court's entry of summary judgment barring claims under the doctrine of collateral estoppel, construing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor. *See Levy v. Kosher Overseers Ass'n of Am., Inc.,* 104 F.3d 38, 41 (2d Cir.1997); *Valley Disposal, Inc. v. Central Vt. Solid Waste Management Dist.,* 31 F.3d 89, 93 (2d Cir.1994). In addition, because Boguslavsky is a *pro se* litigant, we allow him some degree of flexibility in pleading his action. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *Platsky v. CIA,* 953 F.2d 26, 28 (2d Cir.1991) (per curiam). Indeed, courts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party. *See, e.g., Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n. 1 (2d Cir.1998) (per curiam); *Le Grand v. Evan,* 702 F.2d 415, 416 n. 3 (2d Cir.1983). Thus, "[b]ecause [Boguslavsky] is a *pro se* litigant, we read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (citing *Mikinberg v. Baltic S.S. Co.,* 988 F.2d 327, 330 (2d Cir.1993)).

Guided by these principles and construing his pleadings generously, we conclude that Boguslavsky's District Court action was not precluded *in toto* by the NASD proceeding.

## I. *Collateral Estoppel*

■■■ The doctrine of collateral estoppel precludes a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior

---

**2.** Although defendant Russo never formally joined in Kaplan and GK & B's motion for summary judgment, the District Court's order directed the dismissal of the complaint "as against all defendants." *Boguslavsky,* 1997 WL 672007, at *4.

**3.** Boguslavsky also argues that GK & B's refusal to submit to NASD jurisdiction prevents it from invoking collateral estoppel. This argument is

unavailing, however, because collateral estoppel can be raised by a party who was not a party to the prior proceeding from which the preclusive effect arises. *See, e.g., Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 332–33, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Lab., Inc. v. University of Ill. Found.,* 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

proceeding. Under federal law,[4] a party is collaterally estopped from relitigating an issue if a four-part test is met: "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" *Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 91 (2d Cir.1997) (quoting *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir.1995)); *accord Hirschfeld v. Spanakos,* 104 F.3d 16, 19 (2d Cir.1997); *Levy,* 104 F.3d at 41; *Beck v. Levering,* 947 F.2d 639, 642 (2d Cir.1991), *cert. denied,* 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992). Moreover, collateral estoppel can be predicated on arbitration proceedings. *See Benjamin v. Traffic Executive Ass'n Eastern R.R.,* 869 F.2d 107, 114 (2d Cir.1989); *see also Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 223, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (acknowledging that courts may protect federal interests by determining the preclusive effect to be given to arbitration proceedings); *Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 267–68 (2d Cir.1997) (holding that unconfirmed New York state arbitral proceeding may have collateral estoppel effect in federal court).

A. *The 10b–5 and 10b–10 Damages Claims*

 Under this standard, Boguslavsky's claims under Rules 10b–5 and 10b–10 were properly dismissed by the District Court as barred by collateral estoppel to the extent Boguslavsky sought to relitigate the issue of damages for primary violations of the antifraud provisions of the 1934 Act by SRSI's employees. With respect to this issue, Boguslavsky did nothing more than reiterate the allegations against the SRSI employees that he had already presented to the arbitrators—that the failure by SRSI employees to disclose information concerning SRSI's market making and underwriting roles in the

sale of DIPLW securities violated Rules 10b–5 and 10b–10, and thereby injured him. Moreover, Boguslavsky had a full and fair opportunity to litigate this issue, and its determination was necessary to the result reached by the arbitrators. Thus, to the extent that Boguslavsky sought to relitigate the issue of damages for violations of Rules 10b–5 and 10b–10, an issue which the NASD panel had already adjudicated, the District Court properly concluded he was barred from doing so.

 However, Boguslavsky also alleged in the suit that the defendants were themselves liable for the primary violations of the SRSI employees as controlling persons under § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a). Pursuant to § 20(a), a controlling person is jointly and severally liable with a controlled person to any person to whom the controlled person is liable "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). In order to establish a *prima facie* case of liability under § 20(a), a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) "that the controlling person was in some meaningful sense a culpable participant" in the primary violation. *SEC v. First Jersey Securities, Inc.,* 101 F.3d 1450, 1472 (2d Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997) (internal quotation marks and citations omitted). Because the existence of a primary violation of Rules 10b–5 and 10b–10 by SRSI's employees was the only issue litigated in the arbitral forum, Boguslavsky's § 20(a) claim was not identical to the claim previously presented in the NASD proceeding. In particular, we note that a determination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability. Because the defendants were not parties to the arbitration, these issues were not raised

---

4. Federal law governs the preclusive effect of a prior federal question judgment. *See Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 41–42 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). In this case, the NASD proceeding concerned a federal question since the proceeding involved claims arising under Rules 10b–5 and 10b–10.

and, thus, could not have been resolved in the NASD proceeding. Therefore, we find that Boguslavsky's claim that the defendants were liable as controlling persons under § 20(a) was not collaterally estopped, and we remand for further proceedings on that issue. *Cf. Parklane Hosiery Co.*, 439 U.S. 322, 324, 332–33, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (finding that defendant was collaterally estopped from relitigating question of whether a proxy statement was materially false, thereby leaving open individual questions of damages and rescission).

▮ However, even though the NASD arbitration did not preclude litigation of "controlling person" liability under § 20(a), it did preclude litigation of the issue of damages resulting from the underlying primary violation of Rules 10b–5 and 10b–10, which, in turn, may affect the ultimate disposition of Boguslavsky's § 20(a) action. Boguslavsky brought his claims in both the NASD proceeding and the District Court action for the same injury. Thus, because under § 20(a) the defendants would be liable as controlling persons jointly and severally with the primary violators, Boguslavsky's possible recovery under § 20(a) cannot exceed the damages assessed by the arbitrators against the primary violators. The issue of compensatory damages, therefore, is totally precluded from relitigation in the District Court. *Cf. William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 604 (2d Cir.1989) ("It is axiomatic that the purpose of compensatory damages is to replace the loss directly and proximately caused by a party's ... tortious conduct.").

▮ Boguslavsky has also asserted a claim for punitive damages in his Complaint, and that issue, of course, could not be precluded by the NASD proceeding because the imposition of such damages requires an individualized examination of, among other factors, the conduct and state of mind of each defendant. *Cf. Pacific Mut. Life Ins. Co. v.*

*Haslip*, 499 U.S. 1, 15, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (stating that punitive damages are a function of "the gravity of the wrong and the need to deter similar wrongful conduct."). Since the defendants in this case were not parties to the NASD proceeding, there was no inquiry into their specific liability for punitive damages in the arbitral forum. Nevertheless, punitive damages are unavailable under the 1934 Act. *See* 15 U.S.C. § 78bb(a) (1994); *Osofsky v. Zipf,* 645 F.2d 107, 111 (2d Cir.1981); *Byrnes v. Faulkner, Dawkins & Sullivan,* 550 F.2d 1303, 1313 (2d Cir.1977); *Green v. Wolf Corp.*, 406 F.2d 291, 303 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *see also Flaks v. Koegel,* 504 F.2d 702, 706 (2d Cir.1974) (holding that punitive damages are unavailable under § 10(b) and the regulations promulgated thereunder). Thus, *it is* not the doctrine of collateral estoppel that bars Boguslavsky's claim for punitive damages. That claim was properly dismissed because there is simply no cause of action for punitive damages under the 1934 Act.

▮ The unavailability of punitive damages and the arbitral adjudication of compensatory damages significantly limit Boguslavsky's claim on remand. Because under § 20(a), controlling persons are liable only jointly and severally with the primary violators for damages caused by the primary violation, *see* 15 U.S.C. § 78t(a), Boguslavsky can recover no more from the defendants than the actual damages he suffered as determined by the NASD panel. And as we have already discussed, punitive damages are not available under Rules 10b–5 and 10b–10. Thus, while the adjudication of compensatory damages in the NASD proceeding does not bar litigation of the defendants' liability as controlling persons, it limits Boguslavsky's recovery to the unrecovered portion of the arbitration award or, at most, $3,128.76.[5]

---

5. We note that rescission is also available as a remedy for violations of § 10(b) and the regulations promulgated thereunder. *See Flaks,* 504 F.2d at 707; *cf. Randall v. Loftsgaarden,* 478 U.S. 647, 662, 667, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986) (recognizing that there is authority for allowing § 10(b) plaintiffs to choose between rescission and damages). Boguslavsky has not, however, presented a claim for rescission for violations of Rule 10b–5 and 10b–10, so we express no opinion as to either the merits of such a claim or whether an amendment to his complaint asserting additional allegations to support such a claim at this late date would be appropriate.

We cannot, however, determine on the record before us whether Boguslavsky has recovered on the award he received as a result of his success in the NASD proceeding. On remand, therefore, the extent to which the arbitration award has been paid should be ascertained to determine the vitality of his § 20(a) claim. All other issues involving damages arising from Boguslavsky's claims under Rules 10b–5 and 10b–10 are foreclosed by the NASD proceeding.

## B. *The Rescission Claim*

■ In addition to his claim for damages under § 20(a), Boguslavsky's suit also asserted a claim for rescission under § 29(b) of the 1934 Act, which had not been presented during the NASD arbitration. Collateral estoppel, therefore, did not bar assertion of this claim in the District Court.

Section 29(b) provides for the rescission of a contract if the contract violates any provision of the Act or its regulations. *See* 15 U.S.C. § 78cc(b) (1994). In his District Court action, Boguslavsky apparently sought to rescind his customer agreement with SRSI because, as of December 20, 1994, SRSI operated without a director of compliance and thus was not properly registered as a securities broker-dealer as required by § 15(a)(1) of the 1934 Act.[6] *See* 15 U.S.C. § 78o(a)(1) (1994).

Boguslavsky's § 29(b) claim is, to say the least, subtly pleaded. Nevertheless, even though Boguslavsky's papers are not entirely lucid, *pro se* litigants are held to a less stringent standard than counseled litigants. *See Haines,* 404 U.S. at 520, 92 S.Ct. 594; *Platsky,* 953 F.2d at 28.

■ Under this liberal pleading standard, Boguslavsky arguably presented an identifiable claim under § 29(b) predicated on a violation of § 15(a)(1). Both his Complaint and Amended Complaint asserted that under § 29, the DIPLW transaction was "unlawful and void." In addition, both the Complaint and Amended Complaint alleged that Kawas was SRSI's Director of Compliance, and that Kaplan terminated Kawas on December 19, 1994. Boguslavsky also asserted in his Amended Complaint that SRSI was "defunct" at the time the DIPLW transaction was settled. Moreover, in his "Affidavit in Support of Plaintiff's Motion for Summary Judgment," Boguslavsky alleged that "due to the actions of defendant Kaplan, at the time of the alleged fraud SRSI no longer was a duly registered broker-dealer, and Kaplan is personally liable to the plaintiff." Furthermore, Boguslavsky's statement of uncontested material facts stated that, "[u]pon termination of ... [Kawas and Zigouras] SRSI ceased to be a duly registered broker-dealer. . . ."

In light of these allegations, Boguslavsky properly asserted a claim under § 29(b) of the 1934 Act which, like the § 20(a) "controlling person" claim, was not presented to, and thus, not litigated in, the NASD proceeding. Although this rescission claim was not artfully pleaded, and the District Court understandably overlooked it, the assertion of the claim was not precluded by the NASD proceeding. We leave open the question thus presented—i.e., whether Boguslavsky is entitled to rescission of his customer agreement with SRSI because SRSI failed properly to register as a securities broker—and remand to the District Court for consideration of this question in the first instance.

## CONCLUSION

For the foregoing reasons, we affirm the District Court's order granting summary judgment to the defendants to the extent that it dismissed Boguslavsky's claim for

---

6. Although we have held that there is no private right of action under § 15(c)(1), *see Asch v. Philips, Appel & Walden, Inc.,* 867 F.2d 776, 777 (2d Cir.1989) (per curiam), *cert. denied,* 493 U.S. 835, 110 S.Ct. 114, 107 L.Ed.2d 75 (1989), we have yet to address whether an alleged violation of § 15(a)(1) can form the predicate for a rescission action under § 29(b). We note that the Fifth Circuit has acknowledged the availability of such actions, *see Regional Properties, Inc. v. Financial & Real Estate Consulting Co.,* 752 F.2d 178, 182 (5th Cir.1985), and the Ninth Circuit, without actually deciding the issue, has suggested likewise, *see Western Fed. Corp. v. Erickson,* 739 F.2d 1439, 1443–44 n. 5 (9th Cir.1984). We decline to address this issue in the instant appeal, however, because it is not necessary to our review of the District Court's application of collateral estoppel.

damages under Rules 10b–5 and 10b–10 as collaterally estopped by the NASD arbitration. However, we also vacate the District Court's order to the extent that it dismissed Boguslavsky's action *in toto*, and remand for further proceedings on the issue of controlling person liability under § 20(a) for violations of Rules 10b–5 and 10b–10, as well as on the rescission claim under § 29(b) of the Securities Exchange Act of 1934.[7] We do not, of course, express an opinion as to the merits of Boguslavsky's claims, and our decision concerning the lack of preclusion with respect to some claims does not indicate any view of the validity of these claims. Our decision relates solely to the District Court's disposition of the action based on the doctrine of collateral estoppel. The ultimate outcome of Boguslavsky's suit remains to be resolved in the District Court.

---

7. We noted earlier that Russo never filed an appearance or responded in any way to Boguslavsky's action. Since we are remanding for further proceedings, the District Court should also consider Russo's status in this case.