MARQUIP, INC., Plaintiff,

v.

FOSBER AMERICA, INC., Fosber SPA and United Container Machinery, Inc., Defendants.

No. 96–C–726–S.

United States District Court, W.D. Wisconsin.

Dec. 8, 1998.

David J. Harth, Foley & Lardner, Madison, WI, for Plaintiff.

David L. De Bruin, Michael, Best & Friedrich, for Fosber America, Inc., Fosber SPA.

John E. Nathan, Daniel M. Gantt, Catherine Nyarady, Fish & Neave, New York, NY, and John F. Hovel, Kravit, Gass Hovel & Leitner, Milwaukee, WI, for United Container Machinery, Inc.

## MEMORANDUM and ORDER

SHABAZ, Chief Judge.

Plaintiff Marquip, Inc. commenced this patent infringement action against the defendants Fosber America, Inc., Fosber SpA and United Container Machinery, Inc. alleging that the paperboard downstackers manufactured and sold by defendants infringe United States Patents Nos. 4,200,276 (the '276 patent) and 4,273,325 (the '325 patent). On May 21, 1997 this Court granted summary judgment in defendants' favor finding no literal infringement under either patent. On June 10, 1997 a second summary judgment decision was rendered in defendants' favor finding no infringement under the doctrine of equivalents. Judgment was entered accord-

ingly dismissing plaintiff's complaint. On May 19, 1998 the Federal Circuit Court of Appeals issued a decision affirming all aspects of this Court's judgment except that portion dismissing plaintiff's claim for infringement of the '276 patent under the doctrine of equivalents, which it vacated and remanded.

On September 14, 1998 this Court considered the issue of infringement under the doctrine of equivalents, again granting summary judgment in favor of the defendants on the basis that defendants' equipment does not infringe the '276 patent. The matter is now before the Court on plaintiff's motion for relief from judgment pursuant to Rule 60(b) on the basis of allegedly new facts concerning the operation of defendants' machines.

## BACKGROUND

This Court's summary judgment decisions of May and June 1997 were based on undisputed facts concerning the operation of defendants' downstackers, including the presence of a functional interrupt mechanism in all versions of the accused devices. The undisputed facts led to the entry of judgment in defendant's favor on June 11, 1997 ("1997 judgment") dismissing plaintiff's complaint on the basis that there was no infringement, literal or under the doctrine of equivalents, of any claim of the '276 patent.

Those facts remained undisputed on Appeal and were applied to the '276 claims in the infringement analysis of the Federal Circuit in its decision of May 19, 1998. The Court of Appeals affirmed all aspects of the June judgment "except for that portion which dismiss[ed] Marquip's claim for infringement of the '276 patent under the doctrine of equivalents," which it vacated. The Court of Appeals partially vacated the initial judgment not on the basis of factual dispute but because it disagreed with the claim construction of this Court. Accordingly, the matter was remanded for the purpose of applying the undisputed facts to the claims as construed by the Court of Appeals in light of the legal limits of the doctrine of equivalents. Appellate decision at 9. Upon remand each party represented in its pretrial report that no further discovery was contemplated.

On September 14, 1998 after undertaking the analysis suggested by the Court of Appeals on remand, this Court again entered judgment in defendants' favor finding no infringement as a matter of law ("1998 judgment"). Almost simultaneously plaintiff asserts that it became aware of new facts concerning the operation of defendants' downstackers which are the basis for the present motion for relief from judgment. Plaintiff appealed the 1998 judgment and brought this Rule 60(b) motion.

It is not disputed that defendants' machines operate in the manner described in the previous decisions for most cardboard stacking operations. Specifically, the previously undisputed facts correctly describe downstacker operation for all but the last stack in an order. This final stack is part of what is commonly referred to as "order change". An order change occurs when sufficient sheets of a particular size and shape are cut and the cardboard processing machinery must convert to cut and handle sheets of a different size. Because this conversion involves the entire dry end of the cardboard processing machinery it varies from the typical process of separating groups of sheets within an order for stacking.

The following is a general summary of the undisputed order change process. When the machine detects that sufficient sheets to complete an order have been created, or when a manual control directs a change of order, a rotary shear upstream of the cut-off knife and shingling nip is fired severing the cardboard web. Simultaneously, conveyors downstream of the shear are accelerated creating a gap between the final sheet of the old order and the first sheet of the new order. At the point where the last sheet in the final group of an order is shingled one of two processes may take place. The conveyors below the nip may be halted until the gap between the orders is closed and then restarted to create a new gap in accordance with the normal downstacker function for within-order group separation. Alternatively, the conveyors downstream of the nip may be accelerated thereby expanding the existing gap between orders and eliminating the need for the interrupt mechanism to accomplish group separation.

It is this alternative process, employed in some of defendants' machines during order change, that plaintiff asserts is newly discovered evidence, wrongfully concealed by defendants, justifying relief from judgment under rule 60(b).

## MEMORANDUM

Rule 60(b) establishes the procedural framework for relieving a party from the effects of a final judgment. The rule strikes a balance between the interest in having legal rights fully litigated on their merits and the need for finality in litigation. The following portions of the rule are relevant:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment order or proceeding was entered or taken.
>
> \* \* \* \* \* \*
>
> This rule does not limit the power of the court to ... set aside a judgment for fraud upon the court.

Plaintiff asserts all of the above reasons, (1),(2),(3),(6) and fraud on the court, as bases to set aside the judgment.

Because the motion is untimely to the extent it is based on reasons (1), (2) and (3) and unjustified to the extent it is based on reason (6) or on fraud on the court, the motion must be denied.

*Rule 60(b)(1),(2) and (3)*

 The one year limitations period applicable to reasons (1), (2) and (3) of rule 60(b) is jurisdictional and not subject to judicial extension. *Wesco Products Co. v. Alloy Automotive Co.* 880 F.2d 981, 985 (7th Cir.1989). Perhaps because the pending 60(b) motion was filed less than a month after entry of the final judgment of September 15, 1998, the parties did not believe it necessary to consider the jurisdictional timeliness of the motion. However, a review of the pending motion and the nature of the previous judgments leads to the inescapable conclusion that plaintiff is actually seeking relief from the final judgment of June 11, 1997 entered outside the jurisdictional limit.

Discovery in this matter was complete prior to the entry of the 1997 judgment. As a part of the 1997 judgment the Court considered the submissions of the parties based upon discovery then completed and determined the relevant functioning of the machines as a matter of undisputed fact. Based on these undisputed facts judgment was entered against plaintiff on all claims relating to both the '325 and '276 patents. The decision of the Federal Circuit left that judgment mostly intact, remanding only for the application of known facts to the '276 claims as construed by the Federal Circuit and then only as to the question of infringement under the doctrine of equivalents. The judgment of no literal infringement, grounded as it necessarily was in the undisputed facts, was expressly affirmed. Plaintiff expressly recognizes that facts now challenged were critical to both the 1997 judgment and its affirmance. Support Brief at 4. Those same facts were applied in rendering the 1998 judgment of non-infringement. The jurisdictional propriety of considering the merits of the pending motion depends on which judgment date is the appropriate measuring point for the one year limitation period. If the 1997 judgment is the measuring point the motion is untimely.

Several courts have considered the effect of a second judgment after remand on the filling of a 60(b) motion and have concluded that the initial judgment is the appropriate measuring date if the 60(b) challenge could have been made on the same basis against the original judgment. *Moolenaar v. Government of Virgin Islands,* 822 F.2d 1342 (3d Cir.1987). In *Moolenaar* the trial court entered a judgment reforming a lease for mutual mistake based on its conclusion that the parties never intended to include certain rent producing properties within the scope of the

lease. The judgment was appealed, affirmed in part and remanded for a detrmination concerning the propriety of plaintiff's retention of previously collected rents from the excluded properties. Six weeks after judgment on remand plaintiff sought Rule 60 relief based upon newly discovered evidence which had been withheld by the defendant demonstrating that the parties had in fact intended to include the properties in the lease. The Court rejected the motion without reaching its merits:

> [A]lthough the district court's remanded judgment was entered only six weeks prior to the present action, the reason for the attack on that judgment was available for attack upon the district court's original judgment, which was entered more than a year prior to the present action. Motions under Rule 60(b)(1)–(3) must be brought within one year of entry of a final judgment. An appeal does not toll this time period. Therefore, relief under Rules 60(b)(1)–(3) is time barred.

*Id.* at 1346, n. 5.

Similarly, in *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.,* 752 F.2d 178 (5th Cir.1985), the court rejected a Rule 60(b)(2) challenge as untimely notwithstanding its having been made less than a year after judgment on remand. Because the "newly discovered evidence" related to that portion of the original judgment which was allowed to stand on appeal, the court held that the timeliness of the motion must be measured from the original judgment date. "Allowing a court to entertain admission of newly discovered evidence on remand when that evidence in no way relates to the issues to be considered would contravene the principles underlying the final judgment rule." *Id.* at 184. The Federal Circuit has also considered the issue in the context of a patent dispute, rejecting a 60(b) motion as untimely because it related to validity issues which were the subject of an earlier judgment prior to remand for further infringement determinations. *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1550 (Fed.Cir.1987).

Under the facts of this case it is clear that the appropriate judgment from which to measure the time for presentment of evidence newly discovered or improperly concealed is the 1997 judgment. The 1997 judgment was rendered after full discovery and trial preparation was complete. It was prior to the 1997 judgment that any improper withholding of evidence occurred. Neither the parties, this Court nor the Federal Circuit Court of Appeals believed that additional factual development was necessary or appropriate on remand. It is apparent that the real judgment from which plaintiff seeks relief is the 1997 judgment: "The Court's duty in this case is to wind the clock back to those first summary judgment proceedings in the Spring of 1997." Plaintiff's Reply Brief at p. 3. The same is evident from plaintiff's effort to resurrect its literal infringement claims and expand them to claims not pursued prior to the 1997 judgment: "As will be shown, the order change operation performed by most Fosber downstackers literally (and by the doctrine of equivalants) infringes claims 1, 9 and 13 of the Marschke '276 patent." Rule 60(b) precludes the type of clock winding sought by the plaintiff.

As a matter of policy it is clear that the test prescribed by *Moolenaar*—was the present attack available against the earlier judgment—is the appropriate one. As noted by plaintiff, accepting the new evidence as a basis for reopening the second judgment necessarily implicates the first, as it makes little sense to use conflicting facts for determinations of literal and equivalence infringement. Yet reopening the first judgment is precluded by the need for finality. Under Rule 60(b)(1),(2) and (3) defendant had one year from the entry of the 1997 judgment to bring new evidence to the attention of the Court in order to correct injustice in the judgment. As long as the first judgment depended upon the facts affected by the new evidence, the losing party had the benefit of the full one year period to discover and reveal it to the Court. Remand for a limited purpose does not extend the right to reopen issues resolved by earlier judgments which were affirmed on appeal. Because the present motion was available and is in fact directed to the 1997 judgment, its timeliness must be measured from that judgment.

*Rule 60(b)(6)*

In general, relief under rule 60(b)(6) is available only when the basis for relief does

not fall with the specifically enumerated reasons supporting relief from judgment. *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Wesco Products Co. v. Alloy,* 880 F.2d 981 (7th Cir.1989). "The rationale underlying this principle is that the one year time limit applicable to the first three clauses of Rule 60(b) would be meaningless if relief was also available under the catchall provision." *Wesco,* 880 F.2d at 983. There is little question that the circumstances justifying relief from judgment, if they exist at all, would be within 60(b)(2) or (3).

The facts presently before the Court suggest three possibilities. First, that plaintiff never intended to pursue order change operations as a basis for infringement and therefore never sought to discover such information. Second, that plaintiff was pursuing order change as a basis for infringement and, despite diligent discovery was unaware of the facts concerning the functioning of certain machines during order change until it discovered those facts after judgment. Third, that all parties were aware of the relevance of order change and defendants intentionally concealed the relevant order change evidence from plaintiff by unreasonably limiting discovery responses. The first possibility amounts to a strategic choice which could never support relief. The second falls squarely into Rule 60(b)(2) and the third might constitute misrepresentation or misconduct satisfying Rule 60(b)(3).

■ Nothing about the alleged concealment suggests that it could rise above the fraud against another party of the type contemplated by 60(b)(3). In fact, there is no evidence of false responses to discovery requests. At best from the perspective of plaintiff, defendants engaged in gamesmanship by strategically limiting disclosures based on an unreasonably narrow interpretation of plaintiff's discovery requests. Certainly, failing to provide full disclosure as contemplated by discovery rules is inappropriate and not to be condoned, however such behavior generally does not rise to the level of fraud. *USM Corp. v. SPS Technologies, Inc.,* 694 F.2d 505, 509 (1982). Furthermore, even if such conduct might constitute "other misconduct" within the meaning of 60(b)(3) it

surely does not rise to the type of "extraordinary circumstances" which would justify invoking Rule 60(b)(6). *Pioneer,* 507 U.S. at 393, 113 S.Ct. 1489. *Simon v. Navon,* 116 F.3d 1, 5–6 (1st Cir.1997).

*Fraud on the Court*

■ From the preceding discussion it is apparent that it would also be inappropriate to invoke the fraud on the Court exception to overcome the one year limitation for discovery of new evidence. In general, relief from judgment on the basis of fraud on the court is construed narrowly so as not to swallow the 60(b)(3) limitation and must involve corruption of the judicial process itself, such as bribery or the insertion of bogus documents into the record. *Oxxford Clothes XX, Inc. v. Expeditors International of Washington, Inc.,* 127 F.3d 574, 578 (7th Cir.1997). Although the willingness to expand relief in the patent context may be somewhat greater, *In re Met–L–Wood Corp.,* 861 F.2d 1012, 1019 (7th Cir.1988), even in patent cases it clearly requires more than the defendant's alleged conduct of calculated narrow constructions of discovery requests. *USM Corp.,* 694 F.2d 505.

It appears most likely that plaintiff chose not to focus its discovery requests or legal argument on the order change process because order change presented additional infringement hurdles not involved in the within-order downstacker operation, and because order change is a relatively minor part of downstacker operations. Even assuming plaintiff was pursuing the order change process in discovery, any failure to disclose by defendants would not constitute the type of extraordinary circumstances which would justify relief under rule 60(b)(6) or on the basis of fraud on the court.

## ORDER

IT IS ORDERED that Plaintiff's *motion* for relief from judgment is DENIED.