**Melvin CROSS and Nichols-Cross, Inc., Appellants,**

v.

**CHEM–AIR SOUTH, INC., Appellee.**

No. 09 82 054 CV.

Court of Appeals of Texas, Beaumont.

March 3, 1983.

---

Jerome P. Owens, Jr., Woodville, for appellants.

Blair A. Bisbey, Jasper, for appellee.

DIES, Chief Justice.

Chem-Air South, Inc., as plaintiff below, sued Melvin Cross and Nichols-Cross, Inc., defendants below, for an injunction and damages. Plaintiff alleged defendant Cross (now also Nichols-Cross, Inc., and hereafter referred to in the singular) "commenced operation of a business . . . in direct competition with Plaintiff's business . . . [and] has solicited the aerial herbicide application business of a number of Plaintiff's clients and customers in the territory of operation of Plaintiff in South Texas and Louisiana. . . ." On April 27, 1982, defendant was temporarily enjoined from competing with plaintiff, and plaintiff was ordered to pay defendant seven thousand dollars ($7,000) pending resolution of the litigation. Cross had returned to plaintiff a seven

thousand dollar ($7,000) draft tendered to him pursuant to the noncompetition agreement. Plaintiff filed a supersedeas bond, suspending execution of the court's order regarding the seven thousand dollar ($7,000) payment. It is from the issuance of the temporary injunction defendant Cross perfects this appeal. The parties will be referred to herein as they were below or by name.

Cross was a one-fifth (⅕) owner of Chem-Air South, Inc., and worked for the company as a helicopter pilot spraying herbicides. On October 30, 1981, before Cross left the company, he signed a non-competition agreement which in part states:

> "In return for payment of *$7,000.00,* I agree not to compete in any way in the Aerial Application of Herbicides, either as pilot or as a salesman, agent *or otherwise* representative with Chem-Air South, Inc. in South Texas, South Louisiana or Alabama (otherwise known as the territory of operation of Chem-Air South, Inc.) for a period of two years from this date subject to forfeiture of this payment and damages amounting to $5,000.00 per occurrence." (Emphasis supplied.)

■ First, Cross attacks the temporary injunction on the theory that plaintiff Chem-Air is not entitled to such equitable relief under the clean hands doctrine, urging he (Cross) was forced to end his association with Chem-Air because the company was increasing the recorded number of acres sprayed on its invoices, which had originally been noted by Cross, thereby overcharging its customers. Cross argues that his reputation was being harmed through his continued association with the overcharging Chem-Air, thereby necessitating his departure, and that he signed the noncompetition agreement because plaintiff required it as part of a buy-sell agreement on his stock interest in the company.

Of course, the clean hands doctrine is an established principle of our law. Or as expressed in an earlier case, "He that hath committed iniquity shall not have equity." *Howard v. Richeson,* 13 Tex. 553 (1855). See the many authorities cited in 22 Tex. Jur.2d *Equity* § 45 at 591 (2 ed. 1961).

However, the rule is not absolute. "[T]he party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, must show that he himself has been injured by such conduct, to justify the application of the principle to the case. The wrong must have been done to the defendant himself and not to some third party." *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 410 (1960), citing 2 Pomeroy 99. This personal injury requirement has been reaffirmed in many cases, including *Munzenrieder & Associates, Inc. v. Daigle,* 525 S.W.2d 288, 291 (Tex.Civ. App.—Beaumont 1975, no writ); *Arevalo v. Velvet Door, Inc.,* 508 S.W.2d 184, 186 (Tex. Civ.App.—El Paso 1974, writ ref'd n.r.e.). Sirmons, one of Chem-Air's officers, testified that generally their contracts provide for a certain number of acres to be sprayed at a certain gallon rate, and that in the course of a job it might be sprayed at a different rate but then billed at the contract rate. This practice could result in a difference in the numbers turned in on pilot worksheets and the numbers used in preparing invoices. Sirmons also testified that the acreage figures on the final invoices are supplied by the client and not by Chem-Air's personnel, and that it is equally likely that the actual number of acres sprayed would be over rather than under the figures supplied by the client. So, the court certainly had testimony to support his position, which is discretionary. 31 Tex.Jur.2d *Injunctions* § 35 at 87, et seq. (2 ed. 1962). We find he did not abuse his discretion and overrule this point of error. *Dallas General Drivers, etc. v. Wamix, Inc. of Dallas,* 156 Tex. 408, 295 S.W.2d 873 (Tex.1956).

■ Cross' second point of error follows: "The Trial Court abused its discretion in granting the temporary injunction prohibiting Defendant, Cross, from competing in any way with Plaintiff in the aerial application of herbicides, either as a pilot, salesman, agent, or otherwise in the territory of operation of Chem-Air South, Inc. because

the term "or otherwise" in said order is vague and overbroad."

Cross quotes to us from *Ex parte Slavin,* 412 S.W.2d 43, 44–45 (Tex.1967), that "an 'injunction decree must be as definite ... as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearings.'" We feel the injunction in question satisfies the requirements of *Ex parte Slavin,* supra. The words "or otherwise" should not be isolated, but read in the context of the entire injunction. The term "or otherwise" is merely a catch-all phrase to denote that Cross is not to compete with Chem-Air in any other ways than those specified. It would be unreasonable to expect the trial court to list all the possible ways Cross could compete. This point is overruled.

Cross' third point of error is: "The Trial Court abused its discretion in granting the temporary injunction prohibiting Defendant, Cross, from competing with Plaintiff as a pilot in specified counties in Texas and Louisiana because said order was overbroad and unreasonable."

■ The area and time enjoined from competition must be reasonable. *Weatherford Oil Tool Company v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 951 (1960); *South Protective Services, Inc. v. Robertson,* 560 S.W.2d 174, 175 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ); *Electronic Data Systems Corp. v. Powell,* 524 S.W.2d 393, 397 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.); *Middagh v. Tiller-Smith Company, Inc.,* 518 S.W.2d 589, 592 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.). The test for reasonableness as to territorial restraint is whether or not the injunction is confined to territory actually covered by the former employee in his work for the employer. *Gillen v. Diadrill, Inc.,* 624 S.W.2d 259, 263 (Tex.App.—Corpus Christi 1981, no writ); *AMF Tuboscope v. McBryde,* 618 S.W.2d 105, 108 (Tex.Civ.App.—Corpus Christi 1981, no writ); *American Speedreading Academy, Inc. v. Holst,* 496 S.W.2d 133, 136 (Tex.Civ.App.—Beaumont 1973, no writ).

■ Max Edwards, general manager for Chem-Air, testified that appellant Cross had performed services while an employee of Chem-Air in each of the counties and parishes shown in plaintiff's exhibits, later incorporated into the court's injunctive decree; and appellant Cross, on cross-examination, specifically did not deny working in any of the counties and parishes that the representative of Chem-Air testified to his having worked in as an employee. This point is overruled.

Appellee Chem-Air raises one cross-point that "The trial court erred in ordering plaintiff [Chem-Air] to pay $7,000 to defendant [Cross] because ... Cross ... had waived any right to the receipt of the sum." Cross's voluntary return to Chem-Air of the seven thousand dollar ($7,000) draft tendered pursuant to the non-competition agreement is characterized by Chem-Air as the act of waiver.

■ The question before the trial court in matters relating to a temporary injunction is whether the applicant is entitled to preservation of the status quo pending a trial on the merits. *Iranian Muslim Org'n v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981); *Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589 (Tex.1962). The status quo to be preserved by a temporary injunction is the last, actual, peaceable, noncontested status which preceded the pending controversy. *Scott v. Rheudasil,* 614 S.W.2d 626, 630 (Tex.Civ.App.—Fort Worth 1981, no writ); *Denoie v. Board of Regents, etc.,* 609 S.W.2d 601, 602 (Tex.Civ.App.—Austin 1980, no writ); Cross's return to Chem-Air of the uncashed draft, we feel, indicated that there was some controversy regarding the non-competition agreement, which provided for the payment of seven thousand dollars ($7,000) in return for Cross' agreement not to compete with Chem-Air. Therefore, at the last, actual, peaceable, noncontested status preceding the pending controversy, Cross was in possession of the seven thousand dollars ($7,000) draft from Chem-Air; and in order

to preserve this status quo the trial court ordered the repayment of said sum to Cross. We do not feel that Cross' voluntary return of the seven thousand dollar ($7,000) draft waived his right to receive the sum pursuant to a temporary injunction; such action merely indicated that a controversy was in progress. To hold otherwise would allow Chem-Air to have its cake and eat it too. This cross-point is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.