NUMBER 13-05-493-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


IN THE INTEREST OF M.S.R. AND S.R., CHILDREN


 




On appeal from the County Court at Law No. 1


of Hidalgo County, Texas.


 




MEMORANDUM OPINION


 

Before Justices Yañez, Benavides, and Vela


Memorandum Opinion by Justice Benavides
 Appellant Sameena Ahmed, the natural mother of M.S.R. and S.R., appeals a trial
court order that: (1) modified a 1998 conservatorship order by reclassifying Ahmed as the
possessory conservator rather than managing conservator of the children; (2) terminated
her parental rights of access and visitation to the children; and (3) enjoined her from
alleged harassment of the appellee, her ex-husband, Dr. Shahid Rashid. We find the trial
court did not abuse its discretion in ordering the modification of conservatorship. We do,
however, find the evidence insufficient to support the court's termination of parental access
and visitation rights. Furthermore, we find the permanent injunction overbroad and
unenforceable. Therefore, we affirm the order as to modification of conservatorship and
reverse the order as to termination and the permanent injunction.

I. Factual Background

 Dr. Shahid Rashid and Ms. Sameena Ahmed were divorced in 1998. They are the
natural parents of two minor children from the marriage, M.S.R. and S.R. Dr. Rashid and
Ms. Ahmed were named joint managing conservators in the 1998 divorce decree. After
the divorce, the two children remained at Dr. Rashid's home in McAllen, Texas, where he
maintains an anesthesiology practice. Ms. Ahmed moved to Chicago, Illinois to attend law
school, and upon her graduation in 2001, spent the next two years working in Chicago and
in Washington, D.C. In April 2004, Dr. Rashid filed a motion for modification of the divorce
decree, seeking to be named sole managing conservator. Ms. Rashid then moved back
to the McAllen area in order to be closer to the children and to better contest the motion.

 Dr. Rashid prevailed in the subsequent trial by offering evidence that Ms. Ahmed
had become an unstable and disruptive influence in the children's lives. The trial court (1)
designated Dr. Rashid sole managing conservator, (2) designated Ms. Ahmed possessory
conservator, (3) denied Ms. Ahmed all parental visitation and access rights to the children, (1)
and (4) permanently enjoined Ms. Ahmed from "harassing" Dr. Rashid.

 In an oral pronouncement, the court indicated that four particular pieces of evidence
prompted its modification of conservatorship and termination of parental access rights. 
First, the court cited a tape recording of a telephone conversation (partly in English, and
partly in Urdu) between Dr. Rashid and Ms. Ahmed in which Ms. Ahmed threatened herself
and the two children with "expression[s] of aggression and some loud discussions."

 Second, the court cited allegedly "hostile" behavior by Ms. Ahmed directed towards
the court-appointed attorney ad litem. For instance, Ms. Ahmed became very upset when
the ad litem arrived to observe and supervise Ms. Ahmed's visit with M.S.R. and S.R. at
a McAllen restaurant because she did not believe that the existing agreement mandated
supervised visitation. Ms. Ahmed demanded that the ad litem leave and phoned the police
to file a report. The court also construed Ms. Ahmed's conduct in having an attorney who
was not of record phone the ad litem for questioning on a Sunday as harassment. Ms.
Ahmed does not dispute either incident--she merely claims that the incidents were
legitimate exercises of legal rights that do not rise to the level of "harassment."

 Third, the court sympathized with concerns that Ms. Ahmed had received personal
and financial assistance in McAllen from persons who were known to have "disagreements
or problems" with her ex-husband, thus calling into question whether her motive for
returning to McAllen was to contest the motion or merely to harass Dr. Rashid.

 Finally, the court cited the disparity in stability between Dr. Rashid and Ms. Ahmed. 
Dr. Rashid has a house, a steady medical practice, and greater economic resources,
whereas Ms. Ahmed has spent the years since the divorce moving around the country to
attend school and pursue several jobs.

 With respect to the permanent injunction against "harassing" behavior, the trial court
received testimony by Dr. Rashid about the following incidents: (1) that Ms. Ahmed once
brought the McAllen police with her to Dr. Rashid's home in order to enforce her visitation
rights; (2) that she told members of Dr. Rashid's mosque that Dr. Rashid was a "very bad
person;" (3) that she entered the school of M.S.R. and S.R. in order to access the
children's school records; and (4) that she flew on the same airplane with Dr. Rashid on
a trip to Houston.

 The court issued its written order on May 2, 2005. Ms. Ahmed now appeals all
rulings in the order--the modification of conservatorship, the denial of parental access and
visitation rights, and the permanent injunction.

II. Analysis

 We begin by noting that Ms. Ahmed made a timely and proper request for findings
of fact and conclusions of law, but these were not filed by the trial court. We do not
presume harm to Miss Ahmed, however, because in such situations harm is only presumed
if the appellant is required "to guess the reason or reasons that the trial judge has ruled
against it." Sheldon Pollack Corp. Pioneer Concrete of Tex., 765 S.W.2d 843, 845 (Tex.
App.-Dallas 1989, writ denied). In the instant case, Miss Ahmed was not forced to guess
the reasons she did not prevail because, as we noted above, the trial court specifically
articulated its reasons during the trial. Sagemont Plaza Shopping v. Harris County
Appraisal Dist., 30 S.W.3d 425, 427 (Tex. App.-Corpus Christi 2000, pet. denied)
(determining that although findings of fact and conclusions of law were not filed, the
appellant did not have to guess the reason for the court's ruling because "the trial court
announced its ruling in open court and gave the parties the reason for its ruling"). We
proceed with our analysis by reviewing this reasoning, which can be found in the reporter's
record, and by evaluating it in the light most favorable to the judgment of the trial court. 
Schoeffler v. Denton, 813 S.W.2d 742, 745 (Tex. App.-Houston [14th Dist.] 1991, no writ).

 We review the trial court's order under a highly deferential abuse of discretion
standard. Schoeffler, 813 S.W.2d at 745. The test for abuse of discretion is to determine
whether the trial court acted without reference to any guiding rules or principles, or whether
under the circumstances of the case, the trial court's actions were arbitrary or
unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985).

A. Modification of the Conservatorship Order

 A court may modify a conservatorship order if (1) the modification would be in the
best interest of the child; and (2) the circumstances of the child, a conservator, or another
party affected by the order have materially and substantially changed since the date of the
rendition of the order. Tex. Fam. Code Ann. § 156.101(1)(A) (Vernon 2006). The family
code requires proof of a material and substantial change of circumstances because of res
judicata considerations and the State's desire to prevent constant relitigation with respect
to children. Child v. Leverton, 210 S.W.3d 694, 696 (Tex. App.-Eastland 2006, no pet.).


 A conservator's move to a new location is not itself a material change in
circumstances, but it may combine with other factors to establish a material change. 
Scroggins v. Scroggins, 753 S.W.2d 830, 832 (Tex. App.-Houston [1st Dist.] 1988, no
pet.). Relevant factors include, but are not limited to, the distance of a move, the nature
and quality of the children's contacts with the noncustodial parent, and the proximity,
availability, and safety of travel arrangements. Bates v. Tesar, 81 S.W.3d 411, 430 (Tex.
App.-El Paso 2002, no pet.). Stability for the child is also an important consideration. 
Child, 210 S.W.3d at 698. Evidence concerning stability might serve as evidence not only
of a material and substantial change in circumstances but also as evidence of the next part
of the inquiry--the best interest of the child. Id.

 The best interest of the child is the primary consideration in determining
conservatorship, possession, and access rights of a parent. Tex. Fam. Code Ann. §
153.002 (Vernon 2002); see also E. C. v. Graydon, 28 S.W.3d 825, 828 (Tex.
App.-Corpus Christi 2000, no pet.). The trial court has wide discretion in determining the
best interests of a child because the court is in the best position to observe such things as
demeanor and personalities of the witnesses, which cannot be discerned merely by
reading the record. In re H.S.N., 69 S.W.3d 829, 831 (Tex. App.-Corpus Christi 2002, no
pet.).

 In this case, we do not believe that the trial court abused its discretion in modifying
the conservatorship order to name Dr. Rashid sole managing conservator and Ms. Ahmed
possessory conservator. To begin, it was not an abuse of discretion for the court to find
a "substantial and material change in circumstances" justifying a reconsideration of the
order because the disparity in stability that has developed between Dr. Rashid's
circumstances and Ms. Ahmed's circumstances since the rendition of the original order is
sufficient to constitute a material change. Although Ms. Ahmed was once a daily presence
in the lives of M.S.R. and S.R., she has spent the past five years living over a thousand
miles away in Chicago and then in Washington, D.C. These are moves of a significant
distance which rendered travel arrangements for the children far more difficult than a local
or regional move. Most significantly, the moves have made her living situation far less
stable than it was when the original conservatorship order was rendered. It cannot be
considered an abuse of discretion for the trial court to have judged the situation between
Ms. Ahmed, Dr. Rashid, and the two children to have changed so substantially and
materially over the past five years that a reconsideration of the conservatorship order was
justified.

 We further believe that it was not an abuse of discretion for the court to decide,
based upon the evidence it heard, that it was in the best interest of M.S.R. and S.R. for Dr.
Ahmed to be granted sole conservatorship. In its oral pronouncements, the trial court
explained that it came to its decision after considering the evidence that Ms. Ahmed had
threatened herself and the children in a telephone call, that she had displayed hostility
towards the ad litem attorney (2), that she had received assistance upon moving to McAllen
from persons who had personal problems with her ex-husband, and due to the significant
disparity in stability between the two conservators. The decision the court reached upon
hearing this evidence was not arbitrary or unreasonable. Moreover, the court appears to
have considered all the evidence in concert, rather than basing its decision on any one
point of evidence at the exclusion of the others. Such an analysis cannot be said to have
been made without reference to any guiding rules or principles and cannot be described
as an abuse of discretion.

 Therefore, with respect to the motion to modify conservatorship, we affirm the
judgment of the trial court.

B. Denial of Access and Visitation

 A parent has the right to the companionship, care, custody, and management of his
or her children. In re D.S.P. and H.R.P., 210 S.W.3d 776, 778 (Tex. App.-Corpus Christi
2006, no pet. h.). These are fundamental individual rights which our law recognizes as far
more precious than any property right. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985)
(describing parental rights as "a basic civil right"); Wiley v. Spratlan, 543 S.W.2d 349, 352
(Tex. 1976) ("[t]he natural right which exists between parents and their children is one of
constitutional dimensions"); see also Santosky v. Kramer, 455 U.S. 745, 758-59 (1982). 
 A trial court may limit the rights and duties of a parent, however, upon a written finding that
the limitation is in the best interest of the child. Tex. Fam. Code Ann. § 153.072 (Vernon
2002).

 Complete denial of access should rarely be ordered. See In re Walters, 39 S.W.3d
280, 286-87 (Tex. App.-Texarkana 2001, no pet.). A parent appointed possessory
conservator should at least have periodic visiting privileges with his or her child and should
not be denied such privileges except in extreme circumstances. Green v. Green, 850
S.W.2d 809, 812 (Tex. App.-El Paso 1993, no writ); Thompson v. Thompson, 827 S.W.2d
563, 569 (Tex. App.-Corpus Christi 1992, writ denied); Allison v. Allison, 660 S.W.2d 134,
137 (Tex. App.-San Antonio 1983, no writ); see also Hale v. Hale, No. 04-05-00314-CV,
2006 Tex. App. LEXIS 747, at *8 (Tex. App.-San Antonio January 25, 2006, pet. denied)
(mem. op.). Therefore, this Court's review of any denial of parental access and visitation
rights--be they conditional, temporary, or permanent--must be evaluated under an
exacting standard: only "extreme grounds" can warrant such a harsh remedy. Green, 850
S.W.2d at 812.

 There is little case law defining the contours of the "extreme" grounds that permit
a trial court to deny, rather than merely limit, the access and visitation rights of a parent. 
This perhaps indicates that the remedy is so strict that courts only apply it in rare
circumstances. See Walters, 39 S.W.3d at 286. The few cases providing guidance
feature facts in which the parent's behavior is truly "extreme." Compare Green, 850
S.W.2d at 813 (finding that sexual exhibitionism--walking around in front of the child
wearing only a t-shirt and speaking vulgarly--was grounds to terminate parental rights),
and Smith v. Sims, 801 S.W.2d 247, 250 (Tex. App.-Houston [14th Dist.] 1990, no writ)
(finding that holding a child hostage at gunpoint after murdering the child's mother was
grounds to terminate parental rights); with Panozzo v. Panozzo, 904 S.W.2d 780, 784 (Tex.
App.-Corpus Christi 1995, no writ) (holding that the possibility that the parent might
transport the children outside the court's jurisdiction, including outside the United States,
was not grounds to terminate parental rights); Thompson, 827 S.W.2d at 567 (holding that
failure to pay child support and interference with the child's educational development by
taking the child out of pre-school and visiting the child during elementary school was not
grounds to terminate parental rights); and Walker v. Showalter, 503 S.W.2d 624, 626 (Tex.
App.-Houston [1st Dist.] 1973, no writ) (holding that thirteen-year-old child stating, in
general terms, that she would rather not ever see or visit with the other parent again, was
not grounds to terminate parental rights).

 In the present case, there is insufficient evidence to establish that Ms. Ahmed's
behavior constituted "extreme" grounds meriting a denial of access and visitation rights. 
The most damaging piece of evidence presented by Dr. Rashid is the audio tape in which
Ms. Ahmed is heard threatening to do harm to herself and the two children, M.S.R. and
S.R. This is hardly stable and appropriate behavior, but even indulging all assumptions in
favor of affirming the trial court--assuming that the tape is properly authenticated (3) and that
Ms. Ahmed was not merely "joking," as she contends--this conduct cannot be considered
"extreme" under our jurisprudence.

 The case law does not direct us to view a single verbal threat as "extreme grounds"
meriting the denial of a parent's access and visitation rights. Sexual exhibitionism, murder,
and hostage-taking have been considered extreme grounds--but a single verbal threat has
not been. Green, 850 S.W.2d at 813; Sims, 801 S.W.2d at 250. There is some authority
that directs courts to respond to verbal threats by denying parental rights of access and
visitation, but these are cases of repeated and incessant threats, generally accompanied
by an extensive history of substance abuse, mental illness, or illegal behavior. See In re
C.M.B., 204 S.W.3d 886, 896-97 (Tex. App.-Dallas 2006, no pet. h.) (terminating parental
rights where mother had a history of psychiatric problems and substance abuse and had,
on multiple occasions, threatened to harm herself and the child). Courts have also
reached similar conclusions in unpublished opinions. See e.g., In re C.S.C., No. 02-06-00254-CV, 2006 Tex. App. LEXIS 10264, at *21-22 (Tex. App.-Fort Worth November 30,
2006, no pet.) (mem. op.) (terminating mother's rights where mother, in addition to making
threats towards herself and her unborn daughter, had bipolar disorder and a pattern of
uncontrolled anger); Reyna v. Dep't of Family & Protective Servs., No. 01-05-00985-CV,
2006 Tex. App. LEXIS 3402, at *18 (Tex. App.-Houston [1st Dist.] April 27, 2006, no pet.)
(mem. op.) (terminating mother's rights where mother had repeatedly, violently abused her
children--including stabbing a child in the hand, dropping the child out of a second-story
window, and hitting the child on the head with a radio--and often threatened to kill them). 
There is simply no evidence that Ms. Ahmed made repeated threats, nor is there evidence
of an extensive history of psychological disorder or substance abuse. Therefore, although
Ms. Ahmed's statements on the audio tape were troubling, they were not "extreme" as
courts have assessed that term in the past. Our precedents suggest that Ms. Ahmed
should be limited to supervised access and visitation rather than having her access and
visitation rights halted altogether.

 Indeed, we believe that the trial court appreciated that Ms. Ahmed's behavior did not
constitute "extreme" grounds when it noted during the course of the trial that Ms. Ahmed
was not a "bad" mother and expressly found that regular visitation and access between Ms.
Ahmed and the children was in the best interest of all parties:

I want these children to get to know you better. I want these children to get
to be with you. I want these children to get to know that Mom is not a bad
mom and that Mom, despite the fact that [she] may have had some
difficulties--Mom is going to do well and is going to have a good relationship
with them.


 These statements reflect the trial court's profound appreciation for the importance
of parental rights of companionship, care, custody, and management. But the court's
ultimate pronouncement in its order denying even supervised access and visitation to Ms.
Ahmed does not similarly reflect a sensitivity to such rights. The trial court should have
recognized that it is improper to order a halt to parental rights on the basis of a single
verbal threat, and it does not matter whether those rights are permanently terminated,
terminated for only a specified period of time, or terminated pursuant to a condition. 
Although we affirmed the trial court's modification of conservatorship, we cannot in turn
affirm the trial court's denial of access and visitation rights to Ms. Ahmed because on this
issue there is a much higher standard--"extreme" grounds--and it has not been met.

 We reverse the trial court's order denying visitation and access rights.

C. Permanent Injunction

 The trial court's permanent injunction prohibited Ms. Ahmed from "carrying out any
activities that would be interpreted as [sic] a harassing manner." We believe that such and
order is too indefinite to be enforceable and that there is no evidence to support the
injunction.

 The right to privacy includes the right to be free from willful intrusions into one's
personal life at home and at work, and individuals may receive injunctive relief in the form
of a court-issued temporary ex parte order to enforce these rights. Vaughn v. Drennon,
202 S.W.3d 308, 320 (Tex. App.-Tyler 2006, no pet.). A resulting permanent injunction
must be narrowly drawn and precise. Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d
264, 287 (Tex. 2004). Injunctions should not be more comprehensive or restrictive than
justified by the pleadings, evidence, and usages of equity. Adjust Video v. Nueces County,
996 S.W.2d 245, 250 (Tex. App.-Corpus Christi 1999, no pet.). They should inform the
defendant of the acts restrained, without calling upon the defendant for inferences or
conclusions about which persons might differ and without leaving anything for further
hearing. Cross v. Chem-Air South, Inc., 648 S.W.2d 754, 757 (Tex. App.-Beaumont 1983,
no writ). An injunction decree or order which is too indefinite is void. Rubin v. Gilmore, 561
S.W.2d 231, 236 (Tex. App.-Houston [1st Dist.] 1977, no writ).

 In this case, the language of the trial court is not specific enough to comport with the
traditionally strict standards that must be applied when drafting permanent injunctions.
Cross, 648 S.W.2d at 757. The language contained in the order--restricting Ms. Ahmed
from "harassing behavior" and justifying the order by citing "the conduct of Sameena
Ahmed"--is overbroad and too vague to be enforceable.

 Moreover, we believe that the evidence does not support an injunction. As we have
noted, because the trial court did not provide findings of fact, the judgment of the trial court
implies all necessary findings of fact to support itself. Schoeffler, 813 S.W.2d at 745. We
may therefore assume that the injunction was issued based upon Dr. Rashid's allegations
that (1) Ms. Ahmed had McAllen Police Department officers accompany her to the Rashid
residence in order to enforce her visitation rights prior to the divorce decree modification,
or (2) Ms. Ahmed told people at Dr. Rashid's mosque that he was a "very bad person." We
may also assume that the court considered Dr. Rashid's oral testimony that Ms. Ahmed
"harassed" him by checking on the school records of M.S.R. and S.R. and by sitting on an
airplane flight with him.

 Presuming that these are indeed the trial court's justifications for issuing a
permanent injunction, we must reverse. First, it is irrelevant whether Ms. Ahmed's
appearance at Dr. Rashid's residence with police officers was intended as intimidating or
harassing behavior because the action was an acceptable exercise of a legal right and
improper motives cannot transform lawful actions into actionable torts. Tenet Health v.
Zamora, 13 S.W.3d 464, 471 (Tex. App.-Corpus Christi 2000, pet. dism'd w.o.j.) (hospital
was entitled to take certain actions under its own discretion and thus the issuance of a
temporary injunction was an abuse of discretion by the trial court). Second, Ms. Ahmed's
reference to Dr. Rashid as a "very bad person" does not rise to the level of harassment that
would justify a permanent injunction. Indeed, it would not even give rise to a claim for
defamation. ABC, Inc. v. Gill, 6 S.W.3d 19, 46 (Tex. App.-San Antonio 1999, pet. denied)
(holding that referring to someone as a "bad guy" is not actionable because it "is not
defamatory and does not contain a verifiable assertion of fact"), overruled on other grounds
by Turner v. KTRK TV, Inc., 38 S.W.3d 103 (Tex. 2000). Third, assuming that the court
took Dr. Rashid's testimony into account, it was not harassment for Ms. Ahmed to examine
the school records of M.S.R. and S.R. because as a managing conservator she was within
her rights to do so. Tex. Fam. Code Ann. § 153.073(a)(3) (Vernon 2006). Finally, there is
no evidence presented that Ms. Ahmed "harassed" Dr. Rashid on the named airplane
flight; she was merely present on the airplane. It is not clear what "harassing behavior" on
the part of Ms. Ahmed the trial court seeks to enjoin.

 We reverse the trial court's issuance of a permanent injunction against Ms. Ahmed.

V. Conclusion

 We find that the trial court did not abuse its discretion in granting the motion to
modify conservatorship, and therefore we affirm with respect to this issue. We find
insufficient evidence, however, to justify the termination of parental rights, and we find the
permanent injunction overbroad and unenforceable. We therefore reverse with respect to
these two issues. The judgment of the trial court is AFFIRMED in part and REVERSED
in part.

 ____________________________

 GINA M. BENAVIDES,

 Justice


Dissenting Memorandum

Opinion by Justice Rose Vela.


Memorandum Opinion delivered and

filed this the 1st day of November, 2007.






1. The dissent correctly observes that there is a notable discrepancy between the oral and written
pronouncements of the trial court in this case. See dissenting opinion, part V. In oral pronouncements, the
trial court stated that, "you [Ms. Ahmed] need to get [psychologically] evaluated and then I will address any
other matters that need to be addressed to the Court as soon as that comes through," but the trial court did
not mention the psychological evaluation in its written order nor did it set a hearing date to evaluate the results
of the evaluation. This discrepancy is significant because if the denial of access and visitation rights was
conditioned upon a psychological evaluation, then the trial court's order would be temporary, and this Court
would lack jurisdiction. See Tex. Fam. Code Ann. § 105.001(e) (Vernon 2006) ("[T]emporary orders rendered
under this section [concerning suits affecting the parent-child relationship] are not subject to interlocutory
appeal."). Following the dissent's analysis, therefore, would require that we dismiss this case. Moreover, it
would be unnecessary to address the merits issues in this case as the dissent does in parts I-IV of it's opinion. 
See dissenting opinion, parts I-IV.

 We respectfully disagree with the dissent's interpretation, however, and we instead read the trial
court's oral language as merely informing Ms. Ahmed that the court would consider a successful psychological
evaluation to be a material and substantial change sufficient to permit her to move to modify the final order
pursuant to her rights under the family code. See Tex. Fam. Code Ann. § 156.101(1)(A) (Vernon 2006). If the
trial court only intended the order to be temporary, as the dissent believes, the trial court most likely would
have specified a hearing date to consider the results of Ms. Ahmed's evaluation. It did not do so. Our opinion,
therefore, proceeds with the understanding that the trial court issued a final, appealable judgment. Neither
party disputes the finality of the order or the jurisdiction of this court.
2. Miss Ahmed argues that the testimony of the ad litem attorney regarding this incident (and others)
is inadmissible because the unsworn testimony of an attorney is not evidence. See Banda v. Garcia, 955
S.W.2d 270, 272 (Tex. 1997). This argument is waived, however, because no contemporaneous objection
to the testimony was made at trial. Id.
3. Ms. Ahmed suggests that the tape may have been altered and argues that the introduction of the
tape into evidence was improper because it was not properly authenticated. We do not address this argument
because the portions of the tape recordings which the trial court relied upon to render a final order are merely
cumulative of evidence which was also introduced via the sworn testimony of witnesses. See Tex. R. App.
P. 44.1(a); see also Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004) (stating that erroneous
admission is harmless if it is merely cumulative).