

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

———————

No. 08-25-00258-CV

———————

Brett Mundy, Appellant

v.

Donna Savell and Matthew McCollum, Appellees

---

On Appeal from the 22nd District Court
Hays County, Texas
Trial Court No. 23-1520

---

## MEMORANDUM OPINION[1]

This case is a dispute between members of limited liability companies about whether

Appellant Brett Mundy, a member and the sole manager of the LLCs, has paid herself an excessive

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

salary and received improper benefits, leaving no profits to be distributed to the other members. Mundy appeals the court's temporary injunction that prohibits further increases in salaries or use of company funds and orders Mundy to deposit into the court registry an amount equal to the company funds she spent to pay her attorneys in the underlying case. For the reasons below, we affirm.

## I. BACKGROUND

### A. Formation of companies

Mundy and Appellee Matthew McCollum are former spouses who, during their marriage, founded two companies along with McCollum's mother, Donna Savell. One of the companies, Jumping Jack, LLC provides boarding, day care, and grooming services for dogs and the other, McCollum-Savell Holdings, LLC, owns the real property on which Jumping Jack operates. Mundy sold a portion of her interest in Jumping Jack to her stepmother, Catherine Mundy, after which time the membership interests were:

| | |
|---|---|
| Brett Mundy | 46% |
| Matthew McCollum | 39% |
| Donna Savell | 10% |
| Catherine Mundy | 5% |

Under Jumping Jack's regulations, its members were entitled to distributions of its net profits. Savell was to first receive distributions equaling $254,000 to recover her contribution of the real property, after which time the net profits would be distributed according to the members' share of ownership.

**B. Mundy's salary**

Mundy is the sole manager of Jumping Jack. To obtain funding for Jumping Jack, the members submitted a business plan. That plan projected that Mundy would receive a salary of $39,600 for the first year of operation and $50,004 for the following three years.[2]

McCollum alleges that when Mundy learned that he was engaged to be remarried, she told him that she would "run Jumping Jack in such a way where [he] would never see a dime[.]" In 2019, shortly after that alleged conversation, Mundy, as the sole manager, increased her salary to $69,096. After multiple increases, Mundy's salary was $192,750 in 2024 and set to be $231,600 in 2025.

**C. Underlying lawsuit and temporary injunction**

In June 2023, McCollum and Savell filed suit on behalf of themselves and the companies against Mundy. The companies are also listed as nominal defendants. The suit includes causes of action for breach of fiduciary duty, breach of express and implied contracts, fraudulent transfer, and unjust enrichment. The lawsuit seeks a corporate dissolution and an accounting and inspection. Savell died during the pendency of the suit and has been replaced in the litigation by her husband, Tom Eisenhour, as the representative of her estate.[3]

Two years later, with the suit still pending, McCollum filed an application for a temporary injunction. He alleged that in addition to her increased salary, Mundy was also paying her attorneys in the present suit from company funds.

---

[2] Mundy's salary is in addition to any distribution of the net profit to which she is entitled as a member of the LLC.

[3] It appears from the pleadings that Mundy disputes whether Eisenhour is Savell's successor-in-interest. That is not an issue in this appeal and we make no determination about whether he is a proper party.

At the hearing on the temporary injunction, McCollum testified that he works as a credit director helping small businesses apply for loans with the Small Business Association. In that position, he is familiar with comparing salaries to those that are typical in an industry. Based on his research, McCollum said that the appropriate annual salary for a general manager of a business like Jumping Jack is between $52,000 and $53,000. Mundy's witness, Danielle Dede Lally, owns and operates a similar dog kennel business in the area. Lally said that her salary in 2025 will be $210,000, which includes "owner draws."[4] She also testified about the salaries of other general manager/owners of similar business; one made $175,000 and a married couple together made $273,294. A general manager that works at one of Lally's locations had a 2025 salary of $80,000 including bonuses and her other management staff is paid hourly and will make about $48,000 in 2025.

McCollum testified that Savell received only minimal distributions from the holdings company created for her real property and that neither of them received any distributions of Jumping Jack's net profits. He further stated that from 2019 until the time of the hearing, Jumping Jack had losses of approximately $220,000.

The trial court found that Mundy received improper benefits by paying herself an excessive salary and using company funds to pay her attorneys and that it is probable that the improper benefits to Mundy "have placed the Company at financial risk." The injunction enjoins Mundy from the following:

> [P]aying legal fees related to this cause or any other personal legal fees out of business funds (those of Jumping Jack LLC or McCollum-Savell Holdings LLC).

---

[4] Lally did not explain what an "owner draw" is but we assume that it is distributions of net profit to her as the owner of the business.

> [P]aying any assistant manager or mid-level employee compensation of any sort in an amount more than 5% above the compensation paid during the 2024 calendar year.

> [P]aying herself or any employee any salary bonus until this lawsuit is fully and finally disposed.

> [P]roviding herself any personal benefits or perks from company funds, including without limitation using company resources to pay personal expenses or "bartering" services of the company for any personal benefit. This does not extend to the payment of distributions in accordance with the adopted Regulations of Jumping Jack LLC.

> [U]sing any company credit cards or other company assets for any expenses other than regular business expenses for the company.

In addition, the trial court ordered Mundy to "immediately pay into the registry of the Court, from her personal funds and not from the funds of Jumping Jack LLC or McCollum-Savell Holdings LLC, $107,417.00, representing the legal fees she has paid in defense of this suit out of company resources."

Soon after receiving the trial court's ruling, Mundy and her stepmother (together holding 51% interest in the companies) signed a consent resolution that purports to amend Jumping Jack's regulations and consent to advancing and reimbursing Mundy's legal fees in this case. Mundy requested that the trial court reconsider the injunction in light of this "new evidence." The record does not indicate that the trial court heard or ruled on that motion.

### D. Issues on appeal

Mundy filed this interlocutory appeal. Tex. Civ. Prac. & Rem. Code § 51.014(4) (allowing for interlocutory appeals of temporary injunctions). She presents one issue: Did the trial court abuse its discretion in granting a temporary injunction? She divides her argument into subsections, challenging the injunction on seven grounds which, for the purposes of discussion, we renumber as issues one through seven. Issue one argues that the trial court abused its discretion by prohibiting

5

her from paying attorney's fees with company funds. In issue two, Mundy challenges the sufficiency of the evidence to show a probable right of recovery on the merits. In issues three and four, she urges us to hold that the injunction is void for lack of specificity in describing the harm and why it is irreparable and because the terms are too vague to be enforced. Issue five contends that the trial court abused its discretion in granting a mandatory injunction. In issue six, Mundy argues that granting the injunction was improper because of McCollum's delay in requesting it. And, in issue seven, Mundy argues that McCollum was not entitled to an injunction because he has an adequate remedy at law.

## II.  APPLICABLE LAW AND STANDARD OF REVIEW

A temporary injunction preserves the status quo while a case is pending. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id*.

We review a trial court's grant of a temporary injunction for abuse of discretion. *Id*. The trial court does not abuse its discretion unless it "acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles." *Id*. at 211. "In resolving evidentiary matters, a trial court does not abuse its discretion if some evidence reasonably supports the court's ruling." *Abbott v. Anti-Defamation League Austin, Sw., and Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (internal quotation marks omitted).

## III.  ANALYSIS

### A.  Attorney's fees

Mundy argues that the trial court abused its discretion by prohibiting her from paying her attorneys in this case from company funds because such payments are allowed by the Texas

6

Business Organizations Code. The Code, however, provides only that a company *may* cover such fees, not that it must. Tex. Bus. Orgs. Code § 101.402 ("A limited liability company may indemnify [], pay in advance or reimburse expenses incurred by a person" which includes a member, manager, or officer of the LLC.).

Mundy argues "[i]f the companies had chosen to restrict this obligation, they could have done so in the Regulations." But the right to advancement or indemnification of expenses is not the default. If a company chooses to extend this right to its members, it can provide for it in its governing documents. *Id.* § 8.002 ("The governing documents of a . . . limited liability company *may* adopt provisions of this chapter or *may* contain other provisions, which will be enforceable, relating to [] (2) advancement of expenses.") (emphasis added). Advancement rights are therefore contractual. *L Series, L.L.C. v. Holt*, 571 S.W.3d 864, 875 (Tex. App.—Fort Worth 2019, pet. denied) (referring to the right to advancement of legal expenses as a "bargained" for right); *In re DeMattia*, 644 S.W.3d 225, 230 (Tex. App.—Dallas 2022, no pet.) (explaining in the context of a claim for advancement of attorney's fees that "courts are obliged to enforce the parties' bargain according to its terms"). There is no provision in the companies' regulations giving Mundy the right to pay her legal expenses from company funds.

In the alternative, she argues that because the companies themselves are defendants to the suit, "[t]he same fees necessary to defend the entities are necessary to defendant Manager Mundy." She concludes that the injunction has the effect of requiring her to personally pay to defend the companies.

Appellees filed their suit individually and on behalf of the companies. A derivative suit provides the ability for a minority shareholder or LLC member to sue on behalf of the company. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 58 (Tex. 2019). The company is considered a

7

plaintiff in these actions.[5] *Id.* In seeming contradiction, the company is also called "nominal defendant" in derivative actions because "resistance of the company's usual decisionmakers to the minority shareholder's claims is what causes derivative litigation in the first place." *Id.* The dual titles do not mean that the company is *actually* the entity defending the suit in addition to prosecuting it. Courts look to the substance of the claims to determine whether the company and a litigant are actually co-defendants or are adverse. *Id*. at 59–60. In this case, McCollum and Savell alleged that Mundy is depleting the company's funds for her own benefit. They claim harm not just to themselves but to the companies as well. Despite the companies' designations as nominal defendants, the legal expenses incurred by Mundy are for her personal defense and the trial court was within its discretion to enjoin her from paying her attorneys with company funds.[6]

We overrule Mundy's first issue.

## B. Probable right of recovery

The injunction contains the trial court's findings that "as a matter of law and pursuant to the applicable governing documents executed by Brett Mundy, Brett Mundy owes fiduciary duties to Jumping Jack LLC[.]" Mundy argues that McCollum did not show a probable right to recovery because she does not owe a fiduciary duty to individual members[7] of the LLCs and, even if she

---

[5] However, "if justice requires [,] a derivative proceeding brought by a member of a closely held limited liability company may be treated by a court as a direct action brought by the member for the member's own benefit. Tex. Bus. Orgs. Code § 101.463 (c)(1).

[6] Mundy also argues that the consent resolution—signed after the trial court issued a letter ruling granting the injunction—approves the payment of her fees by the companies. Appellees say that the consent resolution is not valid because Mundy did not give the required notice of a meeting or get the written approval of all members for any action to be taken without a meeting. We do not consider whether the consent resolution is valid because that was not before the trial court at the time it made the ruling on appeal. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) ("Because portions of the record were not before the trial court when its decisions were made, they will not be considered by this Court in determining whether the trial court abused its discretion.").

[7] The application for temporary injunction was brought by McCollum individually and as the successor-in-interest for Savell, but not on behalf of the companies.

did, the business judgment rule prohibited the trial court from interfering with her management of the company.

Generally, "members of limited-liability companies [] do not owe formal fiduciary duties to fellow members simply because of their relationship as co-members." *Bertucci v. Watkins*, 709 S.W.3d 534, 544 (Tex. 2025). However, as other courts have recognized "the relationship between a managing member of an LLC and a nonmanaging member is similar to that of a general partner/limited partner relationship, and [] such an arrangement thereby creates a fiduciary obligation on the part of the managing member." *Davis v. Crawford*, 700 S.W.3d 438, 449 (Tex. App.—Eastland 2024, no pet.).

Moreover, the Texas Business Organizations Code allows an LLC's governing documents to impose duties that members would not otherwise have. Tex. Bus. Orgs. Code § 101.401 (permitting an LLC's company agreement to "expand, restrict, or eliminate any duties, including fiduciary duties, and related liabilities that a member, manager, officer, or other person has to the company or to a member or manager of the company[ ]").

Jumping Jack's certificate of formation names Mundy as the company's sole manager and states:

> A manager of the Company shall not be liable to the Company or its members for monetary damages for an act or omission in the manager's capacity as a manager, except that this Article Ten does not eliminate or limit the liability of a manager to the extent that manager is found liable for (i) a breach of the manager's duty of loyalty to the Company or its members; (ii) an act or omission not in good faith that constitutes a breach of duty of the manager to the Company or an act or omission that involves intentional misconduct or a knowing violation of the law; (iii) a transaction from which the manager received an improper benefit, whether or not the benefit resulted from an action taken within the scope of the manager's office; of (iv) an act or omission for which the liability of a manager is expressly provided by an applicable statute.

9

Mundy has a fiduciary duty to the other members of the companies by virtue of her position as manager and because governing documents specifically impose that duty.

Mundy alternatively argues that even if there is a fiduciary duty, the business judgment rule protects her management from a court's interference. "The business judgment rule in Texas generally protects corporate officers and directors, who owe fiduciary duties to the corporation, from liability for acts that are within the honest exercise of their business judgment and discretion." *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015)

First, we are unaware of any case applying the business judgment rule in the LLC context. Assuming it does apply to LLCs, it does not protect Mundy from an injunction because "the business judgment rule does not apply to protect a corporate officer from liability for acts that are dishonest, fraudulent, or self-dealing." *Lowry v. Tarbox*, 537 S.W.3d 599, 615–16 (Tex. App.— San Antonio 2017, pet. denied). Because the trial court found that Mundy engaged in self-dealing by paying herself an excessive salary and paying her personal legal fees from company funds[8], the business judgment rule does not apply.[9] Because Mundy's conduct was not "within the honest exercise of [her] business judgment and discretion," the trial court was not precluded from interfering with her management of the companies. *Sneed*, 465 S.W.3d at 173.

We overrule Mundy's second issue.

---

[8] Mundy does not challenge the sufficiency of the evidence to support the findings.

[9] Mundy argues that we should follow Delaware law (often looked to on corporate matters) which imposes a presumption that a corporate officer acted "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Appellees urge an opposite presumption that "when a plaintiff alleges self-dealing by a fiduciary…, a presumption of unfairness automatically arises, and the fiduciary bears the burden to rebut the presumption." *White v. White*, 704 S.W.3d 250, 269 (Tex. App.—El Paso 2024, no pet.). We need not decide this issue because even if the presumption is in favor of Mundy, there was sufficient evidence to rebut it.

**C. Statement of probable imminent harm**

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance [and] shall be specific in terms[.]" Tex. R. Civ. P. 683. Mundy argues that the temporary injunction is void because it does not explain the probable, imminent, irreparable harm if it were denied.

The Texas Supreme Court has interpreted Rule 683 to require "that the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue." *Transp. Co. of Tex. v. Robertson Transports, Inc.*, 261 S.W.2d 549, 553 (1953). Conclusory statements that the applicant will suffer irreparable harm are not sufficient. *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 747 (Tex. App.—Dallas 2011, no pet.). The adequacy of a temporary injunction's description of the reasons for its issuance depends on whether it will: "(1) enable a party against whom the temporary injunction has been issued to understand the basis for the ruling and evaluate the propriety of a challenge to the injunction, and (2) provide an adequate basis for appellate review of the injunction." *Id*. at 748

The injunction in this case states that the trial court found "that good cause exists for issuing the temporary injunction, that Plaintiffs are likely to prevail on their claims, and that if the temporary injunction is not issued, Plaintiffs will suffer immediate and irreparable harm." The injunction went beyond these conclusory statements, however, and specifically found the following:

> [A]s a matter of law and pursuant to the applicable governing documents executed by Brett Mundy, Brett Mundy owes fiduciary duties to Jumping Jack LLC (the "Company"), including without limitation the common-law and contractual duties of loyalty to the Company and its members, including Plaintiffs, and the duty to refrain from engaging in self-dealing transactions or transactions from which Brett

11

Mundy received an improper benefit. The Court further finds that Plaintiffs have shown that it is probable that Brett Mundy paid herself a salary out of the funds of the Company in excess of the amount set forth in the business plan that she executed, which plan she shared with financial institutions and other third parties as a representation of her intended operations of the business. The Court further finds that Plaintiffs have shown that it is probable that her excessive salary constitutes an improper benefit. The Court further finds Plaintiffs have shown that it is probable that [] Brett Mundy paid attorneys representing her individually, and not representing the interests of the Company, out of the funds belonging to the Company, which payments constitute an improper benefit. The Court further finds that it is probable that Brett Mundy's improper benefits have placed the Company at financial risk. The Court further finds that it is probable that Brett Mundy's improper payments to herself constitute a breach of the governing documents that she executed for the operation of the Company.

These findings state the specific harm caused by Mundy's self-dealing and the effect—"plac[ing] the Company at financial risk." The demise of a business is among the kinds of damages that "cannot be easily calculated" and are therefore irreparable. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 602 (Tex. App.—Amarillo 1995, no writ); *Khaledi v. H.K. Glob. Trading, Ltd.*, 126 S.W.3d 273, 283 (Tex. App.—San Antonio 2003, no pet.) (same); *Towers v. Grogan*, No. 01-97-00946-CV, 1998 WL 191760, at *4 (Tex. App.—Houston [1st Dist.] Apr. 23, 1998, no pet.) ("[D]isruption or demise of an existing business, clientele, goodwill, and the like are injuries not easily assigned a dollar value, and, thus, temporary injunction will issue."); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied) (same).

The language of the injunction is sufficient to enable Mundy to understand the reasons the trial court granted the injunction and provides us "adequate basis for appellate review." *El Tacaso, Inc.*, 356 S.W.3d at 748.

We overrule Mundy's third issue.

**D. Vagueness**

Rule 683 also requires that a temporary injunction "shall be specific in terms [and] shall describe in reasonable detail . . . the act or acts sought to be restrained." Tex. R. Civ. P. 683. Mundy contends that the order is vague in several respects.

First, Mundy argues that the provision enjoining her "from paying legal fees related to this cause or any other personal legal fees out of business funds (those of Jumping Jack LLC or McCollum-Savell Holdings LLC)" is unclear. Specifically, she questions whether she can pay the legal expenses *of the companies* in this action. As we explained in section III A, the companies are nominal defendants and the claims asserted are against Mundy personally. Mundy also states that it is not clear whether this provision bars her from paying fees to register herself as a veterinarian tech, registering Jumping Jack with the Texas Department of Licensing and Regulations, or protesting property taxes for McCollum Savell Holdings. The fees in her example are not "legal fees related to this cause or any other personal legal fees" but are fees that are incurred to run the companies and would not be prohibited by the injunction.

Mundy also challenges the provision that states:

Brett Mundy is immediately enjoined from paying herself any salary, benefits, or compensation, for the calendar year of 2025 or any year thereafter until this lawsuit is fully and finally disposed, paying herself compensation of any sort in an amount above the compensation she received during the 2024 calendar year.

We agree that this provision has an internal conflict because it prohibits both *any* salary and a salary above the 2024 amount. However, we addressed this conflict in a prior order in which we stayed the part of the provision prohibiting Mundy from paying herself any salary. The portion remaining in effect is clear that Mundy can be paid a salary, but that salary is capped. Consequently, the vagueness of which Mundy complains in her brief has since been remedied.

Mundy further contends that some of the provisions are vague because terms are not defined. Specifically, she complains that the restriction on increasing the salary of "any assistant manager or mid-level employee compensation" is vague because the terms "assistant manager" and "mid-level employee" are not defined. Likewise, she challenges the injunctions against paying salary bonuses, providing herself personal benefits or perks, or using the company credit card or other asset other than for regular business expenses because the order does not include definitions of "bonus", "personal benefits," "perks," "company credit card," "company asset" or "regular business expenses." For the most part these terms have ordinary meanings and are understood without definitions. In addition, when read in the context of the entire order, the evidence, and the claims, it is clear what Mundy is enjoined from doing: paying herself or others an "excessive salary" and "improper benefits" that deplete the funds of the company so that no other owners receive a distribution. *Cross v. Chem–Air S., Inc.*, 648 S.W.2d 754, 757 (Tex. App.—Beaumont 1983, no writ) (holding that the terms were not vague when "read in the context of the entire injunction."); *Lifeguard Benefit Servs., Inc. v. Direct Med. Network Sols., Inc.*, 308 S.W.3d 102, 116 (Tex. App.—Fort Worth 2010, no pet.) (determining if injunction is vague by reading it in context of claims and evidence presented at injunction hearing). Further, as the sole manager of Jumping Jack, we presume that Mundy is familiar with the company enough to understand what she is enjoined from doing. *Safeguard Bus. Sys., Inc. v. Schaffer*, 822 S.W.2d 640, 644 (Tex. App.—Dallas 1991, no writ) ("[W]e do not think it unreasonable to assume that he who is sought to be enjoined is sufficiently familiar with the employer's business and its customers to avoid violating the injunction."); *Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 WL 966029, at *4 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.) (same).

To support her arguments that the terms are vague, Mundy provides the following examples of conduct that she says the injunction could be interpreted to prohibit:

- If an employee started work in December 2024 and only worked one month, the employee (presumably working more than one month in 2025) will be paid less than federal minimum wage because Mundy is prohibited from paying them more than 5% over what she paid them in 2024.

- Groomers (who she says work on commission) will not be paid for their work because Mundy cannot pay salary bonuses.

- The injunction against personal benefits or perks would prohibit Mundy from paying herself a salary or "us[ing] the company bathroom, as the water, soap, and toilet paper would be a company resource."

- The provision against bartering would mean that Mundy cannot allow special needs animals to stay in her home or allow Jumping Jack to use water from her personal well because when the company benefits from these services, she also benefits.

- Mundy would not be able to pay emergency expenses (such as repairs on a broken gate or an emergency vet bill) because they are not "regular expenses"

- Mundy could not use a band-aid from the first aid kit because it is a "company asset."

While court orders including injunctions must be reasonably specific, "a court order need not be 'full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague.'" *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988) (quoting *Ex Parte McManus*, 589 S.W.2d 790, 793 (Tex. App.—Dallas 1979, no writ)). Mundy's hypotheticals are clearly not prohibited by the injunction. For example, the prohibition on increasing an employee's compensation more than 5% from the following year logically refers to the hourly rate or annual salary, not the total amount they received in 2024. For employees paid on commission, commission is part of their compensation and is not a prohibited salary bonus. The personal benefits from company assets that the order limits obviously do not include the use of

15

everyday items (toilet paper, water, band-aids) that all employees would expect to have access to while working.

Finally, Mundy argues that the some of the provisions of the injunction are not warranted by the evidence.[10] She says that the trial court could not enjoin her from increasing the pay of "any assistant manager or mid-level employee" because there was no evidence at the hearing about their salaries. Similarly, she contends that there was no evidence to support prohibitions on bonuses, personal benefits, or bartering. While an injunction must be specific, it also must be "in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written." *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (1956). The trial court, having found that it was probable that Mundy paid herself an "excessive salary" could ensure that she did not find a work-around of the salary cap and commit the same wrongs in a different form. The prohibition against conduct that may not yet have occurred was not an abuse of discretion.

We overrule Mundy's fourth issue.

### E. Mandatory injunction

"A mandatory injunction requires conduct from a party, whereas a prohibitive injunction forbids conduct." *Universal Health Services, Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.). Because a mandatory injunction alters the status quo, the plaintiff has a higher burden of proof and must provide a "'clear and compelling presentation' as to the third prong—that the injunction is necessary to prevent irreparable injury or extreme hardship." *Tex. Health Huguley, Inc. v. Jones*, 637 S.W.3d 202, 215 (Tex. App.—Fort Worth 2021, no pet.)

---

[10] Mundy does not explain how the sufficiency of the evidence is relevant to her argument that the provision is vague.

(quoting *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 400 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). Mundy contends that the temporary injunction in this case is a mandatory injunction and that it was error to grant it because McCollum failed to present any evidence of necessity or extreme hardship.

Mundy does not specify which provisions she believes are mandatory but appears to argue that they all are. She states that the injunction "disrupts years of status quo whereby Mundy operated the business per the terms of the Articles of Incorporation and the Regulations." "Status quo is defined as 'the last, actual, peaceable, noncontested status which preceded the pending controversy.'" *Id*. at 577 (quoting *Transport Co*., 261 S.W.2d at 553–54). By restricting *further* salary increases, bonuses or uses of company funds, the trial court preserved the status quo of the company as it existed at the time the injunction was requested.

The only provision that requires Mundy to affirmatively take action is the order that Mundy "immediately pay into the registry of the Court, from her personal funds and not from the funds of Jumping Jack LLC or McCollum-Savell Holdings LLC, $107,417.00, representing the legal fees she has paid in defense of this suit out of company resources." A trial court has "inherent authority" to order a party to deposit disputed funds into the registry of the court. *Midwestern Cattle Mktg., LLC v. Nw. Cattle Feeders, LLC*, No. 02-17-00274-CV, 2018 WL 1414834, at *5 (Tex. App.—Fort Worth Mar. 22, 2018, pet. denied) (mem. op); *In re Reveille Res. (Tex.), Inc.*, 347 S.W.3d 301, 304 (Tex. App.—San Antonio 2011, orig. proceeding); *Zhao v. XO Energy LLC*, 493 S.W.3d 725, 736 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Such orders are not temporary injunctions for which interlocutory appeals are authorized, even if they are included in a temporary injunction. *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 578 (Tex. 2018) (per curiam); *Midwestern Cattle Mktg., LLC*, 2018 WL 1414834, at *5;

*Faddoul, Glasheen & Valles, P.C. v. Oaxaca*, 52 S.W.3d 209, 212 (Tex. App.—El Paso 2001, no pet.) (same); *Diana Rivera & Assocs., P.C. v. Calvillo*, 986 S.W.2d 795, 798 (Tex. App.—Corpus Christi 1999, pet. denied).

Because the order to deposit funds into the registry is not appealable and the remaining provisions are not mandatory injunctions, we do not address Mundy's argument that McCollum did not meet the heightened burden of proof for mandatory injunctions.

We overrule Mundy's fifth issue.

### F. Delay in seeking relief

McCollum said he first became concerned that Mundy was paying herself an excessive salary in 2022 (although he also testified that he had an "inkling" that the salary was "a little bit inappropriate" in 2020 or 2021). However, he did not file suit until June 2023 and did not request an injunction until June 2025.[11] Mundy's sixth issue claims that the trial court abused its discretion in granting the temporary injunction because of McCollum's delay in requesting it.

We do not agree that, as Mundy argues, the delay indicates a lack of irreparable harm. The injury asserted by McCollum was an ongoing one. *Muth v. Voe*, 691 S.W.3d 93, 138 n. 30 (Tex. App.—Austin 2024), *review granted, decision rev'd on other grounds*, No. 24-0384, 2026 WL 1108685 (Tex. Apr. 24, 2026) (considering the "enduring" and "continuing" nature of the injury in holding that the delay did not demonstrate the lack of need for an injunction). Each new payment of an excessive salary or improper benefit constitutes a new injury. The fact that McCollum did not seek relief before June 2025 does not mean that there is no irreparable future harm.

---

[11] McCollum states that he did not initially request a temporary injunction because the parties were working on a settlement agreement. He filed his application after the settlement fell through.

In addition, "Texas caselaw does not prevent injunctive relief merely because a potential plaintiff did not file a claim as quickly as possible." *Garth v. Staktek Corp.*, 876 S.W.2d 545, 550 (Tex. App.—Austin 1994, writ dism'd w.o.j.). A delay only affects a party's right to injunction if it "places the party sought to be restrained in a worse position than if there had been prompt action, and lulled him by inaction." *Los Angeles Heights Indep. Sch. Dist. v. Chestnut*, 287 S.W. 693, 694 (Tex. App.—San Antonio 1926, no writ); *see also Miller v. Talley Dunn Gallery, LLC*, No. 05-15-00444-CV, 2016 WL 836775, at *7 (Tex. App.—Dallas Mar. 3, 2016, no pet.) (mem. op.). Mundy presented no evidence and makes no argument that McCollum's delay in requesting an injunction harmed her in any way.

We overrule Mundy's sixth issue.

### G.  Irreparable harm

Finally, Mundy's last issue challenges the sufficiency of the evidence to support the trial court's finding that McCollum's injury is irreparable.

Generally, an injunction is not proper when a legal remedy through money damages is available. *Butnaru*, 84 S.W.3d at 211. The parties focus their arguments on whether there is evidence that Mundy is insolvent because "Texas cases hold that a plaintiff does not have an adequate remedy at law if the defendant faces insolvency or becoming judgment proof before trial." *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 527 S.W.3d 579, 587 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (collecting cases). We do not examine evidence of insolvency, however, because as explained in section III C, "[d]amage that cannot be easily calculated, such as the demise of an existing business, may constitute irreparable injury." *Khaledi*, 126 S.W.3d at 283. McCollum testified that, according to tax returns, the business showed approximately $220,000 in income losses since 2019. The profit and loss statement for the year 2024 showed net income of

- $9,580.54. And for the first quarter of 2025 (before the temporary injunction hearing) the profit and loss statement showed a net income of -$24,998.43

The trial court did not abuse its discretion because there was some evidence from which it could find that the companies were at risk and would be irreparably harmed if Mundy was not prohibited from depleting its funds.

We overrule Mundy's seventh issue.

## IV. CONCLUSION

We hold that the trial court did not abuse its discretion in entering the temporary injunction against Mundy. The order of the trial court is affirmed.

MARIA SALAS MENDOZA, Chief Justice

May 15, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.