09-1815-cv(L), 09-2324-cv(CON)
*In re One Communications Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## AMENDED SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 18th day of June, two thousand ten.

PRESENT:

AMALYA L. KEARSE,
ROBERT D. SACK,
DEBRA ANN LIVINGSTON
                *Circuit Judges*.

---

One Communications Corp, as successor in interest to CTC Communications Group, Inc., and CTC Communications Acquisition,
        *Plaintiff-Counter-Defendant-Appellant*,

  -v.-                              Nos. 09-1815-cv, 09-2324-cv

JP Morgan SBIC LLC, Sixty Wall Street SBIC Fund, L.P., The Megunticook Fund II, L.P., The Megunticook Side Fund II, L.P., Kevin O'Hare, Jeffrey Koester, Mellon Investor Services LLC, as nominal defendant,
        *Defendants-Appellees*,

Verizon New England Inc., as defendants on a Declaratory Judgment Claim, Northern New England Telephone Operations LLC, Telephone Operating Company of Vermont LLC,
        *Defendants-Counter-Claimants-Appellees*,

Stockholder Representative Committee, on behalf of Certain Former Stockholders of Lightship Holding, Inc.,
        *Plaintiff-Counter-Defendant-Appellee*.

---

NICHOLAS W. LOBENTHAL (John M. Teitler, Alan S. Rabinowitz, Paul Ettori, *on the brief*; Mark S. Resnick, The Resnick Law Group P.C., Boston, MA, *of counsel*), Teitler & Teitler, LLP, New York, NY, *for Plaintiff-Counter-Defendant-Appellant*.

JAYNE S. ROBINSON, (K. Ann McDonald, Brett G. Canna, *on the brief*) Robinson & McDonald LLP, New York, NY, *for Defendants-Appellees* JP Morgan SBIC LLC and Sixty Wall Street SBIC Fund, L.P., *and for Plaintiff-Counter-Defendant-Appellee*.

PAUL E. SUMMIT (Ira K. Gross, Phillip Rakhunov, *on the brief*), Sullivan & Worcester LLP, Boston, MA, *for Defendants-Appellees* The Megunticook Fund II, L.P. and The Megunticook Side Fund II, L.P.

DAVID B. MACK (Sean T. Carnathan; Michael H. Ference, Jonathan Kurta, Schenzi Ross Friedman Ference LLP, New York, NY, *on the brief*), O'Connor, Carnathan and Mack LLC, Burlington, MA, *for Defendants-Appellees* Kevin O'Hare and Jeffrey Koester.

Appeals from a March 31, 2009 judgment and a May 1, 2009 order of the United States District Court for the Southern District of New York. UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment and order of the district court are AFFIRMED.

Plaintiff-Counter-Defendant-Appellant One Communications Corp. ("OCC") appeals from a March 31, 2009, judgment and a May 1, 2009 order of the United States District Court for the Southern District of New York (Swain, *J.*), dismissing its federal law claims and counterclaims, respectively with prejudice and declining to exercise jurisdiction over the remaining state law claims. OCC argues that Lightship Telecom LLC, a competitive local exchange carrier (together with Lightship Holding, Inc., a corporation holding all of Lightship Telecom's stock, "Lightship"), was operating in violation of its contracts and federal and state telecommunications laws and that the defendants-appellees, who are major shareholders, directors, and high-level employees of

2

Lightship, made misrepresentations during the sale of the company to OCC's predecessor in interest, CTC Communications Group ("CTC"), that violated Sections 10(b), 15 U.S.C. § 78j(b), and 20(a), 15 U.S.C. § 78t(a), of the Securities Exchange Act of 1934, as well as state law. We assume the parties' familiarity with the underlying facts, procedural history, and specification of the issues on appeal.

We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6) *de novo*. The court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In order to state a claim under § 10(b) and Rule 10b-5, which implements it, "[a] plaintiff must allege that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's conduct caused plaintiff injury." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgm't LLC*, 595 F.3d 86, 92 (2d Cir. 2010) (quoting *Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 321 (2d Cir. 2002) (internal quotation marks and brackets omitted)). A complaint alleging securities fraud is required to satisfy the heightened pleading standard of the Private Litigation Securities Reform Act, Pub. L. No. 104-67, 109 Stat. 737, and Federal Rule of Civil Procedure 9(b); the circumstances constituting the fraud must be stated with particularity. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). "A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent. Allegations that are conclusory or unsupported by factual assertions are insufficient." *Id.* (internal citation omitted).

In addition, the complaint must provide "particular allegations giving rise to a strong inference of scienter" — "that the defendant acted with the required state of mind." *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (internal quotation marks omitted). In order to satisfy the pleading requirements of § 10(b) and Rule 10b-5 with respect to scienter, the plaintiff may "alleg[e] facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns*, 493 F.3d at 99. The court must take into account plausible opposing inferences when determining whether pleaded facts give rise to a strong inference of scienter, and the inference of scienter must be at least as compelling as any opposing inference that could be drawn from the alleged facts in order to satisfy the standard. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007).

OCC argues with regard to the allegations in its complaint (1) that certain pre-agreement representations made by Lightship and its officers and directors may be the foundation of a § 10(b) claim and were false, (2) that, in any event, the representations in the merger agreement between Lightship and CTC were false and that it so adequately pled in the complaint, (3) that there were post-agreement representations that were not considered by the district court, and (4) that the sellers acted with scienter throughout.

With respect to the pre-agreement representations allegedly made by Lightship, we conclude that the merger agreement foreclosed any reliance by CTC on those representations and that therefore no § 10(b) claim may be brought based on them. The merger agreement itself contained

both a merger clause, section 10(c), and a separate provision, section 6(d), specifically disclaiming the ability of CTC to rely on representations or warranties that were "inconsistent with or in addition to the representations and warranties" set forth in the agreement. In assessing whether a plaintiff reasonably relied on a representation, a court must consider the entire context of the transaction, including the sophistication of the parties, the content of written agreements, and the complexity and magnitude of the transaction. *Emergent Capital Investment Mgm't, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003). "Where the plaintiff is a sophisticated investor and an integrated agreement between the parties does not include the misrepresentation at issue, the plaintiff cannot establish reasonable reliance on that misrepresentation." *ATSI Commc'ns*, 493 F.3d at 105. OCC does not allege that CTC was not a sophisticated investor, and indeed the record reflects that it was such. Section 10(c) of the agreement clearly provides that the agreement is integrated and, in combination with section 6(d), suffices to show that reliance on pre-agreement representations was unwarranted as a matter of law.

OCC identifies a number of representations and warranties within the merger agreement itself that it claims are misrepresentations actionable under § 10(b). One of the representations at issue, section 4(h) of the agreement, warranted that Lightship's financial statements accurately reflected the company's financial condition and were prepared in accordance with Generally Accepted Accounting Principles (GAAP). In its complaint, OCC states: "The Lightship representations, warranties and covenants set forth in the Merger Agreement, including those [in section 4(h)], were false at the time the Merger Agreement was executed. They remained false throughout the remaining diligence period, and they were false at the time the transaction closed."

5

We agree with the district court that this insufficiently pleads the fraudulence of the representation in section 4(h). The complaint sets forth no information as to how or why the books of account had not been maintained in accordance with sound business practice, what provisions of GAAP were being violated by the financial statements, how the alleged billing discrepancy was a liability of the type required by GAAP to be recorded on the balance sheet, why any misbilling was not in the ordinary course of business, and how Lightship's internal controls and procedures were not being followed. Although OCC argues that fraudulently inflating revenue is inherently not sound business practice or GAAP-compliant, Lightship was actually collecting the revenue for which it was allegedly over-billing and was recording it appropriately. OCC has thus failed to allege that the *accounting* was fraudulent or to provide any information as to why the allegedly inflated figure for earnings before interest, taxes, depreciation and amortization ("EBITDA") was an instance of accounting fraud. The complaint fails to satisfy the standards this Court has set for particularity in the context of GAAP-related misstatements that are alleged to be fraudulent. *See, e.g.*, *ECA*, 553 F.3d at 196, 199-200 (noting that allegations of a particular GAAP violation may state a securities fraud claim in conjunction with evidence of corresponding fraudulent intent); *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 157 (2d Cir. 1998) (same).

The complaint also points to section 4(i) of the merger agreement as constituting a violated warranty: "Section 4(i) of the Merger Agreement addressed legal compliance. In this section, LHI represented that except as set forth on a Schedule 4(i), the company had complied in all material respects and was currently in compliance in all material respects with all applicable laws." Like the allegations with respect to section 4(h), this is insufficiently specific. To say that this warranty is false without providing an indication of what law was being broken by Lightship's billing practice

6

is conclusory and lacks particularity. Although OCC does allege in the complaint that the provision of VNXX service was prohibited by law in the relevant states, it fails to identify which named defendants were even aware of VNXX service violations, much less that any defendant had the required scienter. Similarly, in paragraph 94, the complaint alleges that sections 4(e)(i), 4(e)(ii), and 4(e)(iii) make various representations about compliance with permits and licensing requirements. The complaint does not allege with which requirements Lightship was not in compliance, merely that the representations are false. This fails to satisfy the strict pleading requirements of a § 10(b) claim.

Section 4(e)(v), which OCC also identifies as a misrepresentation, according to the complaint "provided that as of the closing date, none of the Lightship Companies had any liability to any affiliate of Verizon Communications, Inc. for CABS-related billing of intercarrier compensation." The actual provision states that "[a]s of the Closing Date, none of the Lightship Companies has any Liability: (A) to any Affiliate of Verizon Communications, Inc. related to billing for CABS with respect to any intra-LATA toll traffic terminating on Lightship's UNE-P lines, or (B) to any CLEC related to switched access charges in its non-UNE-P access bills to other CLECs for UNE-P feature group D access charges associated with its local interconnection arrangements." As all parties agree, the misrepresentations alleged here are not related to intra-LATA toll traffic or UNE-P lines, so the provision is irrelevant.

Section 5(c), which contains pre-closing covenants, required Lightship to refrain from taking various actions that would delay the closing or adversely impact the transaction. It also required Lightship to disclose any knowledge of a breached representation acquired between execution and closing. OCC asserts that this section constitutes a misrepresentation by Lightship but fails to specify with particularity which portions of section 5(c) were misrepresentations and why.

Finally, the complaint cites section 4(k)(iii) as a misrepresentation. 4(k)(iii) relates to Lightship's compliance with *contracts*, and hence the allegations about improper billing under Lightship's Maine Inter-Connection Agreement with Verizon ("ICA") — the only interconnection agreement OCC alleges was violated — could be considered to be pled with sufficient particularity to explain why 4(k)(iii) was a misrepresentation. We nonetheless agree with the district court that 4(k)(iii) does not apply to the Verizon agreement. The provision reads in part:

> **(iii)** All of the Contracts set forth on **Schedule 4(k)(i) and (ii)** are valid, in full force and effect and binding upon the applicable Lightship Company party thereto . . . and the applicable Lightship Company is not in material default under any such Contract, nor, to Holding's Knowledge, does any condition exist that . . . would constitute a material default under any such Contract.

It is uncontested that the ICA does not appear on Schedule 4(k)(i). Section 4(k)(ii) specifies that Schedule 4(k)(ii) consists of two CDs, on which the ICA does not appear. Granted, the printed language of Schedule 4(k)(ii) both directs the reader to the CDs and includes a paragraph stating that "all of Lightship's interconnection agreements with Verizon have expired," noting that those ICAs were being operated on a month-to-month basis. Contrary to OCC's argument, however, this paragraph is most logically interpreted as explaining why the ICAs are being excluded from Schedule 4(k)(ii), rather than including them: if Schedule 4(k)(ii) were read to include the ICAs, then the language of Section 4(k)(ii) is incomplete and incorrect. Moreover, Section 4(k)(iii) specifies that the contracts in schedules (i) and (ii) are valid, in full force and effect, and binding, which would contradict the description of the Verizon ICAs as expired. In order to give full effect to all of the language of the contract, therefore, Schedule 4(k)(ii) is most appropriately read to exclude the Verizon ICAs. We therefore conclude that the complaint does not plausibly allege that the representation in Section 4(k)(iii) was violated by any alleged noncompliance with the ICAs.

As for the further disclosure of financial data by Lightship to CTC between the signing of the merger agreement and the closing of the transaction, OCC argues that the merger clauses do not operate to bar reliance on post-signing disclosure. *See, e.g.*, *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 496 & n.10 (S.D.N.Y. 2005). We need not decide here whether post-agreement representations are distinguishable from pre-agreement representations in this case because we find that OCC has failed adequately to allege scienter with respect to this portion of the claim. OCC has offered nothing more than speculation and vague allegations as to the knowledge and involvement of defendants JP Morgan SBIC LLC, Sixty Wall Street SBIC Fund, L.P., The Megunticook Fund II, L.P., and The Megunticook Side Fund II, L.P. With regard to the asserted misrepresentations, merely pleading the involvement of outside directors Matlack and Oppenheimer, appointed by these entities, is insufficient. With respect to the corporate officers O'Hare and Koester, we conclude that OCC's allegations fail the test laid out in *Tellabs*: with the allegations assessed holistically, the inference that the corporate officers were deliberately inflating their revenue via improper billing practices is not "cogent and at least as compelling" as the inference that they reasonably believed that they were billing properly and appropriately reporting their EBITDA, particularly given that Verizon had never objected to the bills. *Tellabs*, 127 S. Ct. at 2505.

Section 20(a) of the 1934 Act makes "controlling persons" jointly and severally liable with controlled persons to any person to whom the controlled person is liable for securities fraud. 15 U.S.C. § 78t(a); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). In order to establish a prima facie case of liability under § 20(a), a plaintiff must show, among other things, "a primary violation by a controlled person." *Id.* Having concluded above that plaintiffs have failed to demonstrate any primary violations, we affirm the dismissal of the § 20(a) claims.

Finally, this Court "review[s] a district court's decision to decline supplemental jurisdiction over pendent state law claims for abuse of discretion." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009). If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims, as it did here. *Id.* at 52; *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). We note that these claims may still be brought in state court and that plaintiffs may there find a remedy for any viable fraud, misrepresentation, or breach of representations and warranties claims.

All arguments not otherwise discussed in this summary order are found to be moot or without merit.

For the foregoing reasons, the March 31, 2009 judgment and May 1, 2009 order of the district court are hereby AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk